516 A.2d 75

Michael J. Kobylski, t/a Hyland Dairy, Petitioner *v.* Commonwealth of Pennsylvania, Milk Marketing Board, Respondent.

Argued May 16, 1986, before Judges BARRY and PALLADINO, and Senior Judge ROGERS, sitting as a panel of three.

*John R. Sobota,* with him, *Joseph V. Kasper,* for petitioner.

*Daniel T. Flaherty, Jr.,* for respondent.

OPINION BY JUDGE PALLADINO, October 1, 1986:

Petitioner, Michael J. Kobylski t/a Hyland Dairy, appeals from an order of the Pennsylvania Milk Marketing Board (PMMB) revoking Petitioner's Milk Dealer's License for 1985-1986 and revoking Petitioner's right to apply for such license in the future. This order was issued pursuant to §404(10) of the Milk Marketing Law, Act of April 28, 1937, P.L. 417, *as amended,* 31 P.S. §700j-404(10) (1986).[1] We affirm the Board's determination that Petitioner was in violation of the Milk Marketing Law and its revocation of Petitioner's license for 1985-86, but modify the order to permit Petitioner to thereafter reapply.

---

[1] The statute states in pertinent part:

The board . . . may suspend or revoke the right of a licensee or former licensee to apply for a new license period, may suspend, revoke or refuse to transfer a license already granted . . . after determination by the board that the dealer or handler:

(10) Has violated any of the provisions of this Act, or any of the rules, regulations or orders of the board.
31 P.S. §700j-404(10).

PMMB's order stemmed from three citations received by Petitioner. The order adopted the findings of fact and the conclusions of the hearing examiner but not his proposed sanctions.

Notice by certified mail of the first citation was sent to the Petitioner at the dairy's address on June 4, 1984. This citation charged the dairy with multiple violations, including: (1) failure to comply with two previous orders of the Board; (2) payment to farmers below the minimum prices established by the Board; (3) failure to maintain accounting records in accord with Board regulations; and (4) failure to submit required monthly reports. At a hearing thereafter before a hearing examiner, Petitioner was represented by Everett Kobylski.[2]

On July 27, 1984 a second citation was issued charging the dairy with failure to account and to make timely payment for milk from a producer, and on October 29, 1984, a third citation was issued charging the dairy with purchasing milk at below the minimum price fixed by the Board. Petitioner was notified of these citations and the hearing dates by certified mail sent to the dairy, but did not seek a postponement of either hearing nor appear.

PMMB notified Petitioner by certified mail sent to the dairy on May 29, 1985 that a conference would be held June 5, 1985 to discuss why the Board should not revoke the dairy's license as the penalty for the violations in the issued citations. Petitioner did not appear for the conference, nor did he contact the Board to reschedule. On July 17, 1985 the order revoking Hyland Dairy's Milk Dealers License for 1985-1986 and revoking Petitioner's right to apply for a license in the future was issued.

---

[2] Everett Kobylski described himself as the administrator of the dairy. He is the brother of Michael J. Kobylski.

Petitioner filed a petition for review of the order with this Court on August 6, 1985. A supersedeas was granted by PMMB pending disposition of the appeal.

Petitioner objects to PMMB's order on two bases. First, Petitioner claims he received no notice, and had no actual knowledge, of the actions of the Board, including administrative hearings. Second, Petitioner contends that the order itself is: (1) against the law; (2) arbitrary, capricious, unwarranted, and violative of his constitutional rights; and (3) unfair, excessive and unduly harsh under the circumstances.

Our scope of review of the Board's order is limited to determining whether there is substantial evidence in the record to support the order, error of law has been made or any constitutional rights have been violated. *Guers Dairy, Inc. v. Milk Marketing Board,* 90 Pa. Commonwealth Ct. 268, 271, 494 A.2d 888, 889 (1985). We will first address Petitioner's notice contention and then address those contentions which deal with the order.

Petitioner's claim of no notice pertains to the use of certified mail to inform him of the second and third citations, the hearings on these two citations, and the actions of the Board in regards to them. Two reasons are advanced for why this form of notice was defective: (1) Section 405 of the Milk Marketing Law requires service of notice by registered mail; and (2) general certified mail was an unreasonable form of notice under the circumstances.

As to this allegation that the notice by certified mail was defective, we disagree. Section 1991 of the Statutory Construction Act of 1972, *as amended,* 1 Pa. C. S. §1991 (1986) states that registered mail "[w]hen used in any statute finally enacted before or after September 1, 1937, includes certified mail." Therefore, the manner of service, certified mail, is not in contradiction of the statutory requirement.

Petitioner's contention that the use of general certified mail was an unreasonable form of service under the circumstances is a constitutional due process argument. We note that what is constitutionally required is notice which is reasonably calculated, under all the circumstances, to inform the interested parties that action against them is pending. *Mullane v. Central Hanover Bank and Trust Company,* 339 U.S. 306 (1950); *Clark v. Commonwealth Department of Public Welfare,* 58 Pa. Commonwealth Ct. 142, 427 A.2d 712 (1981). Notice of administrative action which is mailed to the interested party's last known address has been found to be reasonable notice. *Yarbrough v. Department of Public Welfare,* 84 Pa. Commonwealth Ct. 208, 478 A.2d 956 (1984). Here, notice of all three citations and hearings dealing with them was sent by certified mail to Petitioner at the address of the dairy, which was the address listed on Petitioner's application for a Milk Dealer's License.

Petitioner claims that his representative informed the Board, at the hearing on the first citation, that there was a "communication problem" within the dairy and that Petitioner had an additional office at another address[3]. It is Petitioner's contention that this was sufficient to alert the Board that there was a substantial risk that Petitioner would not *personally* receive any notice sent to the dairy's address, and, therefore, it was unreasonable for the Board to send notice of the second and third citations, and the hearings dealing with them, to that address.

---

[3] Petitioner argues that his representative informed the Board at the first hearing that mail sent to the dairy's address was not likely to be seen and that all communications should be sent to the representative's address. The record indicates that Everett Kobylski testified that he kept the dairy's records at his office because there were many break-ins and thefts at the dairy.

Even assuming that the Board was so informed and that such a risk existed, we cannot find that notice sent to the dairy's address was unreasonable. Petitioner does not dispute that the notices were received at the dairy, and there are return receipts in the record indicating that they were. Actual notice by Petitioner is not required to meet the constitutional standard. We conclude, as a matter of law, that Petitioner had constructive notice of the citations and the hearings dealing with them.

The argument which Petitioner advances to support his claim that the order of the Board is arbitrary, capricious, unwarranted, and violative of his constitutional due process rights is that the Board did not comply with that portion of §405 of the Milk Marketing Act which requires the Board to file "a statement in writing of the findings of fact in support [of the order]." We do not agree that the Board has not adhered to the statute. In the first paragraph of its order, the Board states: "[T]he proposed orders of the hearing examiner in the above-captioned cases, insofar as they set forth findings and conclusions, are hereby adopted." These findings and conclusions had been previously filed and appear in the record. We find this procedure to be in compliance with the statute. A restatement of the findings of fact is not required when the filed findings of fact of the hearing officer are adopted in their entirety.[4]

Petitioner does not dispute the findings of fact nor the conclusions of the hearing officers that he was in violation of the Board's rules and regulations. However, he contends that the revocation of his Milk Dealer's Li-

---

[4] *See Guerrero v. State of New Jersey,* 643 F.2d 148 (1981). The Third Circuit found that the adoption, in its entirety, of the filed findings of fact of the administrative law judge who heard the case, by the New Jersey Board of Medical Examiners, was not violative of due process.

cense for 1985-86 and his right to reapply in the future is unfair, unduly harsh, excessive and unreasonable under the circumstances. We believe this contention merits examination.

In support of his contention, Petitioner makes three assertions. First, he submits that the violations he is charged with are not actions which affect the purity and wholesomeness of milk, and, therefore, the public health and welfare have not been adversely affected. Second, Petitioner asserts that the penalty would permanently put him out of the dairy business, resulting in his lifelong investment being lost. Petitioner's last argument is that the record shows he did not receive notice of the second and third citations.

An appellate court may modify the order of an administrative agency when it finds that the penalty imposed is unreasonable in light of the circumstances. *Dutchman's Truck Service, Inv. v. State Board of Motor Vehicles Manufacturers, Dealers and Salesmen,* 31 Pa. Commonwealth Ct. 18, 375 A.2d 199 (1977). We believe that Petitioner's first and second assertions are circumstances which justify mitigation of the severity of the penalty.[5]

The record shows Petitioner's citation for underpayment to producers was the result of a recomputation by a PMMB auditor of what the producers should have been paid, based on the butterfat content of the milk. The auditor testified that Petitioner not only underpaid but also overpaid some producers.[6] This is illustrative of

---

[5] We do not agree with Petitioner that the record shows he did not receive notification of the second and third citations. There is at least one return receipt, bearing the signature Michael J. Kobylski, from a mailing dealing with the third citation. However, the presence or lack of actual notice would not affect our decision as to the severity of the penalty under the circumstances of this case.

[6] The amount of underpayment Petitioner was cited for was obtained by subtracting the sum of the overpayments from the underpayments.

the deficiencies in Petitioner's administrative practices at the dairy, which are also evidenced by the other violations by Petitioner noted previously. The purpose of the Milk Marketing Act has been described as ensuring that milk producers will receive a price which will enable an ample supply of good and wholesome milk. *Guers Dairy, Inc.* at 272, 494 A.2d at 890. Petitioner's activities, although not excusable, did not threaten the quality of the milk.

To affirm the order of the PMMB as issued would put Petitioner out of the dairy business. While the evidence in the record is sufficient to sustain the finding that the violations were committed, it does not rise to the level necessary to support permanent deprivation of the Petitioner's right to earn a living and to apply for a Milk Dealer's License in the future.

Therefore, we affirm PMMB's order that Petitioner was in violation of the Milk Marketing Law and its revocation of Petitioner's license for 1985-86, but modify the order to permit Petitioner to thereafter reapply.

ORDER

AND NOW, October 1, 1986, the order of the Pennsylvania Milk Marketing Board at Legal Docket Nos. C-84-20, C-84-21, C-84-54, dated July 17, 1985 is affirmed and the penalty is modified to limit it to a revocation of Hyland Dairy's Milk Dealer's License for 1985-86 year with the right thereafter to reapply.