528 A.2d 1075

Paul P. Slawek, M.D., Petitioner *v.* Commonwealth of Pennsylvania, State Board of Medical Education & Licensure, Respondent.

Argued February 27, 1987, before Judges COLINS and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*F. Emmett Fitzpatrick, F. Emmett Fitzpatrick, Law Offices,* for petitioner.

*Kenneth E. Brody,* Assistant Counsel, with him, *Joyce McKeever,* Chief Counsel, for respondent.

OPINION BY JUDGE PALLADINO, July 28, 1987:

Paul P. Slawek, M.D. (Petitioner) appeals an order of the State Board of Medical Education & Licensure (Board)[1] revoking his license to practice medicine and surgery in Pennsylvania for not having malpractice insurance in violation of section 701 of the Health Care Services Malpractice Act (Act).[2] The order required Pe-

---

[1] This Board was established by Section 412 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended, formerly* 71 P.S. §122. This section was repealed by Section 48(a) of the Medical Practice Act of 1985, Act of December 20, 1985. Section 46 of the Medical Practice Act of 1985 re-established the Board; section 2 titled it the "State Board of Medicine", 63 P.S. §422.2, and section 3 details its establishment. 63 P.S. §422.3.

[2] Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §1301.701.

This section provides, in pertinent part:

(a) Every health care provider as defined in this act, practicing medicine or podiatry or otherwise providing health care services in the Commonwealth shall insure his professional liability only with an insurer licensed or approved

titioner to actively serve 3 months of the revocation. The remainder of the revocation was stayed subject to two conditions: (1) that Petitioner satisfy his professional liability insurance responsibilities in the future; and (2) that should Petitioner terminate his coverage or should it lapse, he notify the Board and the Medical Professional Liability Catastrophe Loss Fund (Fund)[3] within 3 days.

Petitioner has practiced medicine in Pennsylvania since 1967. In 1968 he established a general medical practice known as Rittenhouse Diagnostic/Rittenhouse Radiology (Rittenhouse) in the Roxborough area of Philadelphia. In 1979, Petitioner began a four year diagnostic radiology residency at the Medical College of Philadelphia. Petitioner employed a succession of physicians to serve the Rittenhouse patients during his residency. At the end of his residency on December 30, 1983, Pe-

---

by the Commonwealth of Pennsylvania, or provide proof of self-insurance in accordance with this section.

Subsection 701(a)(1) sets out the minimum amounts of insurance which a health care provider conducting more than 50% of his business in Pennsylvania must carry.

Section 701(f) of the Act provides that "failure of any health care provider to comply with any of the provisions of this section or any of the rules and regulations issued by the director shall result in the suspension or revocation of the health care provider's license by the licensure board."

[3] The Fund was established by section 701(d) of the Act. It is funded by a surcharge on those health care providers carrying the minimum amount of insurance required by section 701(a)(1). Section 701(e) of the Act. The Fund was established to pay the amount of

all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the fund . . . to the extent such health care provider's share exceeds his basic coverage insurance in effect at the time of the occurrence as provided in subsection (a)(1),

Section 701(d) of the Act.

titioner accepted a staff position at the Medical College. He was granted permission to take the month of January as vacation.

Petitioner was in New York in January when he received a call from the administrator at Rittenhouse informing him that the physician employed to serve Rittenhouse's patients had walked out and left a waiting room full of patients. Petitioner returned to Philadelphia to treat these patients. Unable to find a physician to employ, Petitioner did not return to the Medical College to take the staff position.

The Medical College provided Petitioner with malpractice insurance while he was a resident and would have continued to provide it had he begun his staff job. Since Petitioner did not assume the staff position, the Medical College provided no malpractice insurance after December 31, 1983. Petitioner became aware of his lack of coverage in February and began to seek coverage. A policy was finally issued to him on October 5, 1984, but this policy was not retroactive to January. Petitioner attempted, but was unable, to secure insurance for the period of January 1984 to October 5, 1984. The Board issued a citation and thereafter a hearing was conducted before a hearing officer on March 25, 1986.

Petitioner stipulated that he was without professional liability insurance from January 1984 until October 5, 1984. He testified to the circumstances surrounding this lapse and his attempts to obtain coverage for this period. In her proposed report to the Board, the hearing officer stated that these circumstances were considered. On April 23, 1986, the Board mailed Petitioner the hearing officer's proposed report and proposed order, in accord with 1 Pa. Code §35.207, and informed him that he had 30 days to file exceptions to the proposed report and proposed order with the Board. 1 Pa. Code §35.211.

The proposed order revoked Petitioner's license to practice medicine and surgery in Pennsylvania. However, it stayed the revocation after 3 months subject to Petitioner (1) satisfying his professional liability insurance responsibilities in the future and (2) notifying the Board and the Fund within 3 days of any termination or lapse of this insurance. Petitioner filed no exceptions to the proposed report. The Board adopted the report as its final adjudication and order on July 21, 1986. On appeal to this court, Petitioner contends the Board abused its discretion in revoking his license.

The General Rules of Administrative Practice and Procedure, 1 Pa. Code §§31.1-35.251, apply to proceedings before an agency unless "the applicable statute governing or authorizing the proceeding sets forth inconsistent rules on the same subject." 1 Pa. Code §31.1; *See Celane v. Insurance Commissioner*, 51 Pa. Commonwealth Ct. 633, 657 n. 5, 415 A.2d 130, 132 n. 5 (1980). There is no section in the Health Care Services Malpractice Act, the Medical Practice Act of 1974,[4] nor the Medical Practice Act of 1985[5] which conflicts with the General Rules and the Board has not established its own rules governing proceedings before it.[6] 1 Pa. Code §35.213 states:

Failure to file a brief on exceptions within the time allowed under §35.211 (relating to procedure to except to proposed report) *shall consti-*

---

[4] Act of July 20, 1974, P.L. 551, *as amended, formerly* 63 P.S. §§421.1-421.18, repealed by the Medical Practice Act of 1985, Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. §§422.1-422.45.

[5] Act of December 20, 1985, P.L. 457, 63 P.S. §§422.1-422.45. This act reestablished the Board. *See supra* note 1.

[6] Sections 901 and 902 of the Act, 40 P.S. §§1301.901 and 1301.902 authorize the Board to conduct disciplinary hearings and issue penalties for violation of the Act.

tute a waiver of all objections to the proposed
report. Objections to any part of a proposed re-
port which is not the subject of exceptions may
not thereafter be raised before the agency head
in oral argument, or in an application for agency
rehearing or reconsideration, and shall be
deemed to have been waived. The agency head
may refuse to consider exceptions to a ruling ad-
mitting or excluding evidence unless there was
an objection at the time the ruling was made or
within any deferred time provided by the
presiding officer. (Emphasis added.)

Section 703 of the Administrative Agency Law, 2 Pa.
C. S. §703 and Pa. R.A.P. 1551 preclude this court from
reviewing any issue not raised before the governmental
agency unless the Petitioner can demonstrate due cause
for not raising it. The Pennsylvania Supreme Court, in
applying the waiver rule to administrative law cases,
stated the reason for this rule:

[T]he administrative law tribunal must be given
the opportunity to correct its errors as early as
possible; diligent preparation and effective advo-
cacy before the tribunal must be encouraged by
requiring the parties to develop complete
records and advance all legal theories; and the
finality of the lower tribunals' determinations
must not be eroded by treating each determina-
tion as part of a sequence of piecemeal adjudica-
tions.

Wing v. Unemployment Compensation Board of Review,
496 Pa. 113, 117, 436 A.2d 179, 180-81 (1981). This
court may consider a claim of abuse of discretion by an
administrative agency and may modify the order of an
administrative agency if the penalty is unduly harsh.
Kobylski v. Milk Marketing Board, 101 Pa. Common-
wealth Ct. 155, 516 A.2d 75 (1986). In the instant case,

Petitioner was presented with an unexpected emergency situation and the facts, as found by the hearing officer, suggest that the penalty is unduly harsh. Unfortunately, however, the Petitioner failed to file exceptions to the hearing officer's proposed report. 1 Pa. Code §35.211 makes mandatory such a filing to preserve the abuse of discretion issue. By failing to file exceptions, he has waived his right to have this court consider that issue on appeal.

Additionally, Petitioner has offered no explanation for his failure to file with the Board an exceptions brief raising the issue of abuse of discretion. While Petitioner's concern for his patients in an emergency situation is commendable and the unique circumstances of this case might warrant a modification of the penalty, we may not address the merits of Petitioner's contention.

Accordingly, we affirm.

ORDER

AND NOW, July 28, 1987, the order of the State Board of Medical Education and Licensure in the above-captioned case is affirmed.

Judge COLINS dissents.