630 A.2d 478

**GIANT EAGLE, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, MILK MARKETING BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 30, 1993.

Decided July 30, 1993.

Reargument Denied Sept. 10, 1993.

David B. Rodes, for petitioner.

Randall N. Sears, Chief Counsel, for respondent.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

Petitioner, Giant Eagle, Inc. (Giant Eagle), appeals an order of the Pennsylvania Milk Marketing Board (Board) which

denied its application for a milk dealer's license. We reverse and remand.

In July, 1991, Giant Eagle applied to the Board for a milk dealer's license.[1] Thereafter, a hearing was held before a hearing examiner acting on behalf of the Board. At the hearing, the parties stipulated to the following pertinent facts.

4. Giant Eagle, Inc. owns and operates a chain of retail grocery stores located primarily in Western Pennsylvania.

5. Some of the retail grocery stores bearing the Giant Eagle name are independently owned and operated by franchisees of Giant Eagle, Inc.

6. Milk and milk products are sold to retail consumers through the Giant Eagle grocery stores.

7. Milk and milk products are processed and packaged for Giant Eagle, Inc. by Dean Dairy Products Co., Sharpsville, Pennsylvania as well as other licensed Pennsylvania milk dealers.

8. Dean Dairy Products Co. and other licensed Pennsylvania milk dealers also process and package milk and milk products for grocery stores owned and operated by Giant Eagle, Inc. franchisees.

9. Giant Eagle does not process or package milk or milk products.

10. On January 1, 1985, Giant Eagle, Inc. held a Subdealer's License issued by the Milk Marketing Board.

In his proposed decision and order, the hearing examiner concluded as a matter of law that a milk dealer's license may only be issued to those applicants who were licensed as milk dealers as of January 1, 1985. Because Giant Eagle was not so licensed on January 1, 1985, the hearing examiner determined that Giant Eagle did not have a right to process milk and recommended denial of its application for a milk dealer's license. The Board adopted the proposed decision and order

1. At the Board's request the application was resubmitted on January 21, 1992 and was further amended by way of a letter dated July 14, 1992.

of the hearing examiner in full, and denied Giant Eagle's application.

■ On appeal to this court,[2] two issues are presented: (1) whether the Board erred in interpreting section 404 of the Milk Marketing Law (Law)[3] as not permitting issuance of a milk dealer's license to an applicant who did not have such a license on January 1, 1985; and (2) whether section 404 of the Law, as interpreted and applied by the Board, is unconstitutional.

■ With respect to the first issue, Giant Eagle asserts that the Board's interpretation of section 404 of the Law is contrary to the plain language of the statute, and results in an irrational and impermissible economic advantage to stores which had a milk dealer's license in 1985.

Section 404 of the Law provides in pertinent part as follows: The board shall grant a license to an applicant complying with the provisions of this act and the rules, regulations and orders issued by the board pursuant thereto. Anything in this act to the contrary notwithstanding, a store or controlled affiliate which satisfies all other requirements for licensing *shall not be denied* an appropriate license if it has been so licensed on the effective date of this amendment. . . . (emphasis added).

31 P.S. § 700j–404.

The Board has interpreted section 404 as a legislative mandate to deny a milk dealer's license to a store which was not licensed as a milk dealer on January 1, 1985, the effective date of amendments to the Milk Marketing Law (Law). Giant Eagle contends, however, that section 404 does not mandate denial of a license. Giant Eagle asserts that section 404 merely prohibits the Board from denying a store or controlled

**2.** Our scope of review of an order of the Board is limited to determining whether there is substantial evidence of record to support the order, whether an error of law has been made or whether any constitutional rights have been violated. *Kobylski v. Commonwealth of Pennsylvania, Milk Marketing Board,* 101 Pa. Commonwealth Ct. 155, 516 A.2d 75 (1986).

**3.** Act of April 28, 1937, P.L. 417, *as amended,* 31 P.S. §§ 700j–101— 700j–1302.

affiliate's application for a milk dealer's license if that store was licensed as a milk dealer on January 1, 1985. We agree.

■ An administrative agency's interpretation of the statute which it is called upon to administer and enforce is entitled to great weight and deference and will be held to be controlling unless clearly erroneous. *Pennsylvania Medical Society v. Foster*, 154 Pa. Commonwealth Ct. 562, 624 A.2d 274 (1993). However, the legislature does not intend a result which is absurd, impossible of execution, or unreasonable. 1 Pa.C.S. § 1922(1).

If this court were to follow the Board's interpretation of the statute, we would be forced to conclude that the legislature intended to limit the pool of applicants for a milk dealer's license to those that were so licensed on January 1, 1985. Simply by the passage of time, the pool of applicants would extinguish itself, thereby leaving the state without milk dealers. Such a result is unreasonable and absurd.

A careful reading of section 404 suggests that the provision in no way prohibits the Board from granting a milk dealer's license to an applicant who complies with the Law and the rules, regulations and orders issued by the Board pursuant thereto. In fact, by the use of the word "shall", the legislature requires the Board to grant a license to an applicant that so complies. Section 404 merely prohibits the Board from denying a license to a store which was licensed as a milk dealer in 1985 and which currently satisfies all other elements of licensing.

In addition to amending the language of section 404, the 1985 amendments altered the definition of milk dealer. Prior to 1985, a person who purchased, received or handled milk for sale, shipment, storage, processing or manufacture was able to obtain a milk dealer's license. Under the current definition, a licensed milk dealer must either process or manufacture milk for further sale. 31 P.S. § 700j–103. Therefore, we conclude that the amendment to section 404 was intended to permit a store which held a milk dealer's license in 1985 and does not now engage in the processing or manufacture of milk to retain its license.

Because the Board's interpretation of section 404 leads to the absurd result that no applicant, other than a milk dealer who was in the business and licensed in 1985, will be able to function as a milk dealer in the Commonwealth of Pennsylvania in the future, we conclude that the Board's interpretation is clearly erroneous.[4]

As noted previously, the sole basis for denial of Giant Eagle's application was the Board's erroneous interpretation of section 404. Therefore, we reverse the order of the Board and remand this matter to the Board with instructions to grant Giant Eagle's application.

## *ORDER*

AND NOW, July 30, 1993, the order of the Milk Marketing Board in the above-captioned matter is reversed and the matter remanded to the Board with instructions to grant Giant Eagle's application for a milk dealer's license.

Jurisdiction relinquished.

**4.** Because we have concluded that the Board's interpretation of the Law is clearly erroneous, there is no need for us to reach the merits of Giant Eagle's argument that section 404 of the Law, as interpreted and applied by the Board, is unconstitutional.