**PENNSYLVANIA ASSOCIATION OF MILK DEALERS, Petitioner,**

v.

**PENNSYLVANIA MILK MARKETING BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1996.

Decided Nov. 21, 1996.

Publication Ordered Dec. 4, 1996.

---

Allen C. Warshaw, Harrisburg, for petitioner.

Sally A. Ulrich, Chief Counsel, Harrisburg, for respondent.

David B. Rodes, Pittsburgh, for intervenor Giant Eagle, Inc.

Before DOYLE, LEADBETTER and MIRARCHI, Jr., JJ.

DOYLE, Judge.

Before the Court in an equity action in our original jurisdiction are cross-motions for summary judgment filed by the petitioner, Pennsylvania Association of Milk Dealers, and Giant Eagle, Inc., the intervenor and real party in interest.

The parties have stipulated to the following relevant facts:

1. Petitioner, Pennsylvania Association of Milk Dealers (PAMD), represents the interests of Pennsylvania milk dealers and is a corporation duly organized under the laws of the Commonwealth of Pennsylvania....

2. Respondent, the Pennsylvania Milk Marketing Board (the Board), is an agency of the Commonwealth of Pennsylvania. Its offices are located at 2301 North Cameron Street, Harrisburg, Pennsylvania....

3. Intervenor, Giant Eagle, Inc. (Giant Eagle), owns and operates a chain of retail grocery stores and supplies independently owned and operated grocery stores located in Western Pennsylvania, Ohio and West Virginia and is a corporation duly organized under the laws of the Commonwealth of Pennsylvania. Its registered office is located [in] Pittsburgh, Pennsylvania....

4. Giant Eagle sells milk and milk products to retail consumers through its

grocery stores, and sells milk and milk products at wholesale to independently owned and operated stores.

5. Giant Eagle does not purchase, receive or handle milk for the purpose of Giant Eagle's processing or manufacturing the milk; as a licensed milk dealer Giant Eagle purchases raw milk which is processed by a separate dairy prior to wholesale and retail sale.

6. Giant Eagle does not possess equipment or facilities which would enable it to process or manufacture milk, and does not presently intend to acquire such equipment or facilities or to process or manufacture milk.

(Stipulation of Facts at 1–6.)

In July of 1991, Giant Eagle submitted to the Milk Marketing Board an application for a milk dealer's license, which the Board denied on August 20, 1992. On September 18, 1992, Giant Eagle filed with this Court a petition for review of the Board's decision. In an opinion and order dated July 30, 1993, we reversed the Board's decision and remanded the matter to the Board with instructions to grant a milk dealer's license to Giant Eagle. On August 5, 1993, the Board filed an application for reconsideration and reargument of this Court's decision, which was denied on September 10, 1993. On September 27, 1993, the Board filed a petition for allowance of appeal in the Supreme Court of Pennsylvania, which the Court denied on November 3, 1994. On December 22, 1994, the Board filed with this Court a "Request for Guidance," which was denied on January 25, 1995. Finally, pursuant to the order of this Court, the Board issued a milk dealer's license to Giant Eagle on March 9, 1995, and renewed the license for a term of one year commencing on July 1, 1995. Although Giant Eagle had been given a subdealer's license on June 30, 1986, at no time prior to March 9, 1995, did Giant Eagle possess a milk dealer's license.

On February 7, 1995, PAMD initiated the instant action by filing a petition for review, in the nature of a complaint in equity, as well as a motion for a preliminary injunction against the Board, seeking to enjoin the Board from carrying out this Court's order to issue a milk dealer's license to Giant Eagle. A hearing on PAMD's motion for a preliminary injunction was scheduled for March 1, 1995. On February 23, 1995, Giant Eagle applied for leave to intervene on the ground that it is an indispensable party to this litigation. On February 27, 1995, PAMD withdrew its motion for a preliminary injunction, intending to allow its petition for review to proceed through the normal procedures of this Court. On March 1, 1995, we granted Giant Eagle's application for leave to intervene.

Presently before this Court are the cross-motions for summary judgment, filed by PAMD on June 25, 1996, and by Giant Eagle on June 28, 1996. To succeed on a motion for summary judgment, the prevailing party must demonstrate that it is entitled to judgment as a matter of law and that there is no genuine issue as to any material fact.[1] Pa. R.C.P. No. 1035(b). For the reasons set forth below, we hold that Giant Eagle is entitled to summary judgment in its favor. Accordingly, we grant its motion for summary judgment and deny the motion filed by PAMD.

The principal argument underlying PAMD's motion for summary judgment and its case against the Board is that, pursuant to the definition of "milk dealer" in Section 103 of the Milk Marketing Law,[2] an applicant for a milk dealer's license must actually produce or manufacture milk. Thus, it argues that, because Giant Eagle does not itself process or manufacture milk, the Board should not have granted Giant Eagle a milk dealer's license. The short answer to PAMD's argument, of course, is that the Board was *ordered* to do so by this Court, and therefore a contrary conclusion is somewhat disingenuous. Moreover, regarding PAMD's contention that an applicant for a milk dealer's license must process or manufacture milk itself in order to qualify for that

---

1. The essential facts upon which our decision is based have been stipulated to between the parties.

2. Act of April 28, 1937, P.L. 417, *as amended,* 31 P.S. § 700j–103.

license, we reject such an argument and reference the prior litigation between the parties, which was concluded by our prior order in *Giant Eagle, Inc. v. Commonwealth, Milk Marketing Board,* 157 Pa.Cmwlth. 419, 630 A.2d 478 (1993), *petition for allowance of appeal denied,* 539 Pa. 656, 651 A.2d 543 (1994).

The focal point of this issue, as well as this entire case, is the definition of "milk dealer" as defined under the Section 103 of the Milk Marketing Law, 31 P.S. § 700j–103. The Milk Marketing Law was first enacted in 1937 and was subsequently amended and re-enacted in 1968.[3] At that time, the definition of " 'milk dealer' or 'handler,' " provided, in relevant part, as follows:

> 'Milk dealer' or 'handler' means any person, including any store or subdealer or subhandler, as hereinafter defined, who purchases or receives or handles on consignment or otherwise milk within the Commonwealth, for sale, shipment, storage, processing or manufacture, within or without the Commonwealth, whether on behalf of himself or others, or both.... In 1984, the General Assembly amended certain sections of the Milk Marketing Law, one of which was the section defining " 'milk dealer' or 'handler.' "[4]

The definition of "milk dealer" currently reads, in pertinent part, as follows:

> **'Milk dealer'** or **'handler'** means any person, who purchases or receives or handles on consignment or otherwise milk within the Commonwealth, for processing or manufacturing and further sale, within or without the Commonwealth, whether on behalf of himself or others, or both.

31 P.S. § 700j–103.[5] In this regard, this case raises the question of whether an applicant for a milk dealer's license must actually pro-

cess or manufacture milk in order to qualify as a licensed "milk dealer" as that term is defined under the Milk Marketing Law.

■ First, in construing the meaning of statutes of this Commonwealth, we are compelled to observe the rules of statutory interpretation set forth in the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, unless doing so would result in a construction inconsistent with the manifest intent of the General Assembly. In this regard, pursuant to Section 1921 of the Statutory Construction Act,

> When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa.C.S. § 1921(b). Additionally, Section 1903 of the Statutory Construction Act provides as follows:

> **§ 1903. Words and Phrases**
>
> (a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage....
>
> (b) General words shall be construed to take their meaning and be restricted by preceding particular words.

1 Pa.C.S. § 1903. Thus, in our analysis of Section 103 of the Milk Marketing Law and the definition of "milk dealer" contained therein, we may find guidance in the rules of grammar, as well as in the common usage of the English language, in ascertaining the plain meaning of the statute.

■ Reduced to its essential language for our purposes, the definition of a "milk dealer" is: "any person ... who ... purchases ... milk within the Commonwealth, *for* pro-

---

**3.** The Milk Marketing Law was reenacted and amended by the Act of July 31, 1968, P.L. 963, No. 294.

**4.** Act of December 21, 1984, P.L. 1278, No. 243, effective January 1, 1985, *amending* Act of July 31, 1968, P.L. 963, *as amended,* 31 P.S. § 700j–103.

**5.** The 1984 amendments also added a "grandfather clause" to Section 404 of the Milk Marketing Law:

> The board shall grant a license to an applicant complying with the provisions of this act and the rules, regulations and orders issued by the board pursuant thereto. Anything in this act to the contrary notwithstanding, a store or controlled affiliate which satisfies all other requirements for licensing shall not be denied an appropriate license if it has been so licensed on the effective date of this amendment [January 1, 1985]....

31 P.S. § 700j–404.

cessing *or* manufacturing and further sale." 31 P.S. § 700j–103 (emphasis added).

Giant Eagle is a "person" [6] who purchases milk within this Commonwealth *for* processing and further sale.

Although the grammatical structure of the entire statutory provision is rather cumbersome, it is obvious that the phrase "for processing or manufacturing" is a subordinate clause, a clause which modifies "milk" to the extent "milk" is "purchase[d] or receive[d] or handle[d]." Thus, the plain meaning of the statute indicates that, to be qualified for a milk dealer's license, the applicant must purchase, receive, or handle milk, and that such purchasing, receiving, or handling must be for the purpose of the milk's manufacturing or processing. This is precisely what Giant Eagle does. Giant Eagle **purchases** and **receives** raw milk during the **manufacturing** process and **handles** it by transporting it to independent dairies for further **processing** and **future sale.**

Our conclusion is consistent with the rules of grammar and is the only sensible interpretation of " 'milk dealer' or 'handler' " as defined in Section 103 of the Milk Marketing Law. The definition of "milk dealer" under the statute does not state that a milk dealer must actually process or manufacture the milk it "purchases or receives or handles." If the General Assembly intended the definition to include only those who "purchase or receive or handle" **and** "process or manufacture" milk, it would have been easy enough to so provide.[7] To impose the meaning suggested by PAMD would be patently inconsistent with the plain language of the statute and contrary to the only reasonable interpretation discernible under the Statutory Construction Act.

■ Second, we are propelled to such a conclusion because this Court has previously addressed Giant Eagle's entitlement to a milk dealer's license in *Giant Eagle.* We believe that the doctrine of *stare decisis* constrains us to reach the same conclusion as we did in 1993.[8] In *Commonwealth v. Tilghman,* 543 Pa. 578, 588 n. 9, 673 A.2d 898, 903 n. 9 (1996), the Pennsylvania Supreme Court articulated the principle of *stare decisis* as such:

> The rule of *stare decisis* declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different.

Furthermore, in *County of Armstrong v. Workmen's Compensation Appeal Board (Ross and Borough of Kittanning),* 81 Pa. Cmwlth.474, 473 A.2d 755, 757 (1984), we stated: "[This Court is] bound by stare decisis to follow decisions of our own court until they are either overruled by the Supreme Court, or compelling reasons persuade us otherwise." Although PAMD was not a party to the prior action, this case presents facts identical to those presented in the prior *Giant Eagle* case, and we find no compelling reasons to disregard the doctrine of *stare decisis* in this case. To the contrary, the fact

---

**6.** The term "person," as defined in Section 103 of the Milk Marketing Law, "includes an individual, corporation, association, partnership, limited partnership, or other unincorporated enterprise owned or conducted by or on behalf of two or more individuals or other persons." 31 P.S. § 700j–103.

**7.** For instance, if the statute were worded as such, its plain meaning could arguably be that suggested by PAMD:

"Milk dealer" or "handler" means any person who purchases or receives or handles *and processes or manufactures* milk. . . .

Furthermore, if the General Assembly had intended an applicant to process or manufacture the milk it purchases, receives, or handles, it might also have amended the Milk Marketing Law as follows:

"Milk dealer" or "handler" means any person who purchases or receives or handles . . . milk . . . for processing or manufacture *by such person* . . . .

This, however, is not how the statute presently reads.

**8.** The doctrine of *stare decisis* is similar to the law of the case doctrine. The law of the case doctrine, however, provides that "issues decided by an *appellate court* on a prior appeal between the *same parties* become the law of the case and will not be reconsidered" on a subsequent appeal for another phase of the same case. *Burke v. Pittsburgh Limestone Corp.,* 375 Pa. 390, 394, 100 A.2d 595, 598 (1953). When invoking the rule of *stare decisis,* on the other hand, it is not necessary that the parties be identical.

that Giant Eagle has been litigating its entitlement to a milk dealer's license since 1991 illustrates the import of applying the doctrine of *stare decisis* here.

The central issue in the 1993 *Giant Eagle* case, of course, was whether Giant Eagle was entitled to a milk dealer's license. This Court reversed a decision of the Milk Marketing Board which denied Giant Eagle's application for a milk dealer's license. We ultimately remanded the case to the Board with instructions to grant a milk dealer's license to Giant Eagle. The stipulated facts between the parties are recited in the text of the opinion. One of the stipulations, stipulation nine, states that "Giant Eagle does not process or package milk or milk products." *Giant Eagle*, 630 A.2d at 479. We determined that Giant Eagle was nonetheless entitled to a milk dealer's license.[9]

Hence, implicit in the *Giant Eagle* decision was the essential fact that Giant Eagle's entitlement to a license was not negatively affected by the fact that it does not itself process or manufacture milk.[10] Although

that precise issue was not discussed at length in the *Giant Eagle* case, we determined that Giant Eagle was nonetheless entitled to a milk dealer's license. Therefore, the *Giant Eagle* case stands for the proposition that Giant Eagle is entitled to a milk dealer's license, despite the fact that it does not itself process or manufacture milk.

Accordingly, we conclude that, under the current version of Section 103 of the Milk Marketing Law and the definition of "milk dealer" contained therein, a licensed milk dealer is not required to be the actual processor or manufacturer of the milk it purchases, receives, or handles.[11]

Because we have rejected PAMD's contention that only processors and manufactures of milk may obtain a milk dealer's license,[12] we hold that it is not entitled to judgment as a matter of law.[13] Furthermore, based upon our interpretation of Section 103 of the Milk Marketing Law and upon our 1993 decision in *Giant Eagle v. Milk Marketing Board*, we hold that Giant Eagle is entitled to judgment as a matter of law.[14]

---

9. In the *Giant Eagle* case, we also rejected the Board's argument that Giant Eagle was not entitled to a milk dealer's license because it did not possess a license prior to January 1, 1985, the effective date of the 1984 amendments to the Milk Marketing Law.

10. Near the end of Judge Palladino's opinion, she states that "[u]nder the current definition, a licensed milk dealer must either process or manufacture milk for further sale." *Giant Eagle*, 630 A.2d at 480. This statement, however, does not comport with the ultimate holding of the case, especially in light of stipulation 9. Thus, we can only conclude that Judge Palladino's statement is either a typographical error or dicta and thus lacks significant precedential value. The inconsistency existing in the *Giant Eagle* opinion, however, does not negate the fact that the issue presented in this appeal has already been litigated before this Court—namely, whether Giant Eagle is entitled to a milk dealer's license. As previously indicated, we have already answered this question in the affirmative.

11. Of course, under our interpretation of Section 103 of the Milk Marketing Law, not all purchasing, receiving, or handling of milk is sufficient to qualify an applicant as a milk dealer under the Milk Marketing Law. Such purchasing, receiving, or handling must be undertaken for the purpose of processing or manufacturing the milk. As noted in the text of this opinion, we do

not believe, however, that such processing or manufacturing must actually be performed by the applicant.

12. PAMD also argues that "[u]nder [the 1984] amendments, stores which do not process or manufacture milk *and* which did not hold a milk dealer's license as of January 1, 1985, do not presently qualify as milk dealers under the Law." (Brief in Support of Its Motion for Summary Judgment at 8). (Emphasis in original.) We note, however, that possessing a milk dealer's license as of January 1, 1985, affects only a store's entitlement to receive a license under the grandfather clause of 31 P.S. § 700j-404 and does not relate to whether a store is presently qualified to receive a license under the general provisions of the Milk Marketing Law.

13. PAMD also argues that the grandfather clause of 31 P.S. § 700j-404 evinces a legislative intent to enable only processors and manufacturers of milk to obtain a milk dealer's license. However, we do not believe that an analysis of the 1984 amendments to the Milk Marketing Law necessarily leads to this conclusion. Furthermore, even such legislative intent could be inferred, Section 1921(b) prevents us from disregarding the plain meaning of the statute "under the pretext of pursuing its spirit."

14. This matter could have potentially been resolved in the future on the basis of collateral

In 1993 we ordered the Board to issue a milk dealer's license to Giant Eagle. The Board complied with our order. PAMD now sues the Board for complying with our order. The cyclical nature of this litigation underscores the propriety of our result here.

### ORDER

NOW, November 21, 1996, the motion for summary judgment filed by Giant Eagle, Inc. is hereby granted, and the motion for summary judgment filed by the Pennsylvania Association of Milk Dealers is denied.

estoppel as well. However, because the factual averments and stipulations are not sufficient, at this stage, to establish that the Board and PAMD are in privity with one another, we believe that collateral estoppel does not support a finding of summary judgment in Giant Eagle's favor.

However, had we allowed this case to proceed through the original jurisdiction of this Court, it is highly likely that the doctrine of collateral estoppel would have precluded PAMD from relitigating the issue of whether Giant Eagle is entitled to a milk dealer's license.