**Richard PRIES, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (VERIZON PENNSYLVANIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 3, 2006.

Decided July 25, 2006.

━━━━━━━━━━━━━━━━━━━━

John A. Bednarz, Jr., Wilkes–Barre, for petitioner.

Dennis R. Sheaffer, Harrisburg, for respondent.

Lawrence R. Chaban, Pittsburgh, for amicus curiae.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Richard Pries (Claimant) appeals from the Order of the Workers' Compensation Appeal Board (Board) suspending workers' compensation benefits to Claimant and reversing the decision of the Workers' Compensation Judge (WCJ), who had dismissed a suspension petition filed by Verizon Pennsylvania (Employer). At issue is whether Claimant is entitled to workers' compensation disability benefits following his retirement from Employer. Claimant asks us to overturn our recent decision in *County of Allegheny (Department of Public Works) v. Workers' Compensation Appeal Board (Weis)*, 872 A.2d 263 (Pa. Cmwlth.2005)("*Weis*").

Claimant worked as a service technician with Employer since 1972. This work involved Claimant installing and repairing telephone lines, and required him to lift ladders, climb ladders and poles, and pull cable. On September 4, 1989, Claimant sustained work-related injuries to his back. On September 22, 1989, Employer filed a Notice of Compensation Payable (NCP) accepting Claimant's back injury. On May 24, 2001, Employer issued a Supplemental Agreement reinstating Claimant to total disability when he sustained a recurrence of his work injury. On August 30, 2001, Claimant returned to work for one day so that he could retire and receive a $60,000 retirement package Employer offered to him. As part of his retirement paperwork, it appears that Claimant submitted a letter voluntarily withdrawing from employment.

The issue presently before the Court arises from a Petition to Modify or Suspend (Petition) workers' compensation benefits that Employer filed on December 31, 2001. In it, Employer alleges that, as of August 30, 2001, Claimant had returned to work or voluntarily withdrew from the workforce. Alternatively, Employer argues that Claimant was being paid an incorrect average weekly wage and sought a modification to correct this error. Claimant challenged Employer's Petition.

In the proceedings before the WCJ, Claimant offered his own testimony. He stated that Employer had offered him a retirement package. He testified that he spoke with Employer's workers' compensation specialist, Mary Ann Ferrese, about the package. From their conversation, Claimant testified that it was his understanding that the retirement package was conditioned on his returning to work to perform light-duty work for one hour on one day. He testified that, to return to work, he needed to obtain written authorization from his doctor. He indicated that he telephoned his doctor, explained the situation, and that, in response, his doctor provided to him a note that indicated that he could perform light-duty work. He testified that he felt pressured to take the retirement package, because he had only two weeks to decide whether to accept the retirement package, and, physically, "I couldn't do my job." (WCJ Decision, Finding of Fact (FOF) ¶ 3(b) (quoting 4/18/02 Notes of Testimony (N.T.) at 19).) Claimant also testified that, since retiring, he had not looked for work. The WCJ found all of Claimant's testimony credible.

Claimant's treating physician, Mark H. Bell, M.D, also testified. Dr. Bell testified that he had begun treating Claimant in January 2001, when Claimant presented with lower back pain with left radiation. (FOF ¶ 2(a).) He diagnosed Claimant with "Low back pain with left radiculopathy, lumbar degenerative disc disease, myofascial pain, SI joint arthropathy, and lumbar facet arthropathy." (FOF ¶ 2(a) (quoting Bell Dep. at 8).) He testified that he examined Claimant in a follow-up visit on July 12, 2001 and, from that visit, concluded that he did not think Claimant was able to return to his prior job at that time because Claimant's "pain was exacerbated" when he was in the "position to which he had to be in during most of his working day." (FOF ¶ 2(b)) (quoting Bell Dep. at 21.)

Dr. Bell testified that Claimant had contacted him on August 27, 2001 about obtaining a note so that he could return to work for one day in order to retire. Dr. Bell noted that it was not part of his practice to opine as to people being able to work, but that he did provide Claimant with a note to return to work because Claimant's stated desire was to return to work, and the doctor saw it as his job "to get [Claimant] to a situation where he could return to work." (FOF ¶ 2(b) (quoting Bell Dep. at 25).) The WCJ found Dr. Bell's testimony credible.

Claimant also offered the testimony of Dr. Bell's records Custodian. She testified that the records had "a telephone note from the Claimant to Dr. Bell that stated: 'needs to talk to you, it's real important.' Dr. Bell wrote back 'returning [refers to retiring—typographical error] this week. Needs one day of light duty.'" (FOF ¶ 6(a) (quoting Custodian Dep. at 11).) She also testified that the record contained a note reading "To whom it may concern: Richard Pries may return to work on 8/30/01 for light duty. Mark Bell." (FOF ¶ 6(a)(quoting Custodian Dep. at 10).) The WCJ found the Custodian's testimony credible.

Employer presented the deposition of one of its local managers, Patricia Histed, as well as the live testimony of Ferrese.

Histed testified that she had no expectation of Claimant returning to work, that retiring employees generally attend work on their last day only to sign paperwork, and that once the paperwork is completed the retiring employees are permitted to leave. She testified that she did not understand why Claimant needed a doctor's note stating that he could return to light-duty work. She also testified that a light duty position could have been available for Claimant in August 2001. The WCJ found Histed's testimony credible, except as to whether there was light-duty work available. In the absence of supporting "information as to the type and nature of the position and how it would have come about," the WCJ declined to find that a light-duty position was available. (FOF ¶ 7(d).)

Ferrese testified that she had not communicated the retirement package to Claimant, nor did she tell him to obtain a physician's note as to the type of work he could perform. She also testified that she did not provide him with any correspondence as to light-duty work that was available for him. The WCJ accepted her testimony as credible.[1]

Employer also presented the deposition testimony of Robert T. O'Leary, D.O. Dr. O'Leary testified that he performed an Independent Medical Evaluation of Claimant on May 20, 2002, at which he received Claimant's medical records, performed a physical examination of Claimant, and received a history from Claimant. (FOF ¶ 1(a).) Dr. O'Leary opined that Claimant suffered from "lumbar discogenic syndrome with left lower extremity radiculitis status post decompression surgery."

(FOF ¶ 1(b) (quoting O'Leary Dep. at 14).) Dr. O'Leary found that Claimant had reached maximum medical improvement and that Claimant was "impaired but not disabled [such that] ... he was limited to light duty type activity, lifting up to 20 pounds permanently based on his spine condition." (FOF ¶ 1(b) (quoting O'Leary Dep. at 15).) He also opined that Claimant was restricted from frequently bending or twisting and that Claimant would need to change his physical position on an hourly basis. (FOF ¶ 1(b).) Accordingly, Dr. O'Leary concluded that Claimant *was able to perform light-duty work subject to certain physical restrictions.* The WCJ found Dr. O'Leary's testimony credible as to "his diagnosis of Claimant and the restrictions he would impose on Claimant" particularly "in light of the fact that his medical opinions are not challenged by Claimant." (FOF ¶ 7(a).)

Based on his credibility findings, the WCJ concluded that Claimant was forced into retirement. The WCJ noted that, under *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson),* 543 Pa. 74, 669 A.2d 911 (1995), "[f]or disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement *or* that he was forced into retirement because of his work-related injury." (WCJ Decision at 11 (quoting *Henderson,* 543 Pa. at 79, 669 A.2d at 913) (emphasis added).) The WCJ concluded that Claimant was forced into retirement. In support of this decision, he reasoned that:

> the accepted medical testimony of Dr. O'Leary demonstrates that Claimant had reached maximum medical improvement and could, at best, work only at

1. The WCJ rejected a portion of her testimony, not described here, that the WCJ concluded was a legal conclusion that Ferrese was not qualified to make.

the light duty level. And, Claimant's own creditable [sic] and accepted testimony is that he was given only a limited time to make a decision regarding the August 2001 retirement package and believed he could not return to his pre-injury [job].

. . .

In short, Claimant was, as he indicated during his testimony, forced to accept the retirement package insofar as he could no longer perform his duties as a technician.

(WCJ Decision at 11–12.) Thus, the WCJ denied Employer's suspension petition.

Employer appealed the decision to the Board and the Board reversed. In doing so, the Board noted that, subsequent to the WCJ's decision, this Court issued its decision in *Weis.* The Board noted that, per *Weis,* "[t]he claimant must establish that not only was he forced out of his pre-injury job because of his work-related injury, but the entire labor market." (Bd. Dec. at 3.) The Board noted that, while it was undisputed that Claimant had retired, Dr. O'Leary's credible testimony established that Claimant was capable of light-duty work. The Board noted that Claimant failed to present any evidence that he was unable to perform light-duty work. Accordingly, the Board reversed the WCJ and granted the suspension petition. Claimant appeals the Board's reversal to this Court.[2]

There is no dispute that reversing the Board's decision in this case will require us to overturn a recent decision of this Court, *Weis,* on which the Board relied. Claimant argues that, in accordance with *Weis,* the Board improperly shifted the burden

to him to prove that he did not voluntarily remove himself from the entire labor market. He believes that *Weis* marks a departure from long standing precedent of our Supreme Court, citing *Henderson* and *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek),* 537 Pa. 32, 640 A.2d 1266 (1994). The Pennsylvania Trial Lawyers Association (PATLA), as amicus curiae, filed a brief in support of Claimant.

The argument centers around the use of the word "and" or "or" in describing the prerequisite(s) for receiving disability benefits following retirement. Claimant argues that, under Henderson, "[f]or disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement *or* that he was forced into retirement because of his work-related injury." 543 Pa. at 79, 669 A.2d at 913 (emphasis added). Claimant argues that, in *Weis,* this Court replaced the "or" from the *Henderson* analysis, with an "and" requirement, thereby requiring a retiring claimant to show that he was forced into retirement because of his work-place injury *and* that he is seeking employment after retirement.

Claimant argues that "[t]he initial support setting forth the basis for a requirement that retirement from the time of injury job is sufficient to entitle an injured worker to compensation benefits is found in *Petrone v. Moffat Coal Company,* 427 Pa. 5, 233 A.2d 891 (1967)." (Claimant Br. at 15.) Claimant argues that, in it, the Supreme Court concluded that a coal miner, who developed black lung disease from occupational hazards associated with his

2.  "This Court's review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether the Board's procedures were violated, whether constitutional rights were violated, or whether an error of law was committed." *County of Allegheny v. Workers' Comp. Appeal Bd. (Weis),* 872 A.2d 263, 265 n. 2 (Pa. Cmwlth.2005) (citing Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704).

work responsibilities, was forced into retirement because the disease inhibited his ability to use his arms or back. Claimant notes that the Supreme Court, in reaching this decision, reasoned that the claimant was unable to work because he had "no aptitude for remunerative work other than the one which requires muscular exertion." *Petrone*, 427 Pa. at 9, 233 A.2d at 893 (quoted in Claimant's Br. at 16.) Claimant notes that, while the claimant in *Petrone* was able to perform light-duty work, the Supreme Court concluded that "[i]f the finding 'capacity to perform light work' is to mean anything, there must be some evidence that light work exists." 427 Pa. at 8, 233 A.2d at 893. PATLA expands upon this argument, noting that *Petrone* provides that the employer was in a better position to have to establish that work was available for one forced to retire from his given position because of injury. Additionally, PATLA argues that *Petrone* does not require "the injured worker be completely removed from the work force" but, rather, that he be unable to work "due to education, work background and/or training to perform other work." (PATLA Br. at 12.)[3]

Claimant argues that the *Petrone* analysis forms a foundational component of *Kachinski v. Workmen's Compensation*

*Appeal Board (Vepco Construction Company)*, 516 Pa. 240, 532 A.2d 374 (1987).[4]

Claimant argues that *Petrone* and *Kachinski* underlie *Petrisek*, in which the Supreme Court concluded that "[a] disability which forces a claimant out of the *work force* and into retirement is compensable under the [Workers' Compensation] Act [(Act)]."[5] But, where the claimant suffers a disability which has no effect upon his earning power, no entitlement to benefits arises under the Act." 537 Pa. at 37, 640 A.2d at 1269 (emphasis and footnote added). Claimant argues that these cases require Claimant only to show that he was forced from his time of injury job, when taking retirement, because of his injuries. (*See* Claimant Br. at 16–17.) PATLA essentially restates Claimant's position, noting that "[t]he reference to 'work force'" in the first sentence quoted above from *Petrisek*, "must be a reference to the time of injury job, otherwise the second sentence . . . would have no meaning." (PATLA Br. at 11.)

Claimant argues that, in this case, he presented evidence that his injury forced him into retirement. In particular, he notes that he testified that he was unable to return to work, which the WCJ found credible, and Dr. O'Leary opined that Claimant had reached maximum medical

---

3. PATLA quotes the following portion of the *Petrone* opinion:
   There was no evidence introduced at the hearing to show that Petrone could obtain work as an elevator or power lawn mower operator or, indeed any kind of light work. The record is as bare as the Sahara of trees that employers will hire men with the medical, educational and vocational background of Petrone. So far as the evidence reveals, Petrone is as economically totally disabled as if he had to live constantly in a wheel chair.
   (PATLA Br. at 14 (quoting *Petrone*, 427 Pa. at 8, 233 A.2d at 893).)

4. Claimant argues that "[w]here a Claimant is unable to return to his or her time of injury

employment, there is a loss of earning power." (Claimant Br. at 15.) Claimant incorrectly cites this as a direct quote from *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 516 Pa. 240, 532 A.2d 374 (1987)—however, this exact language is not in *Kachinski*. PATLA echoes this argument in its brief, contending that "[i]t is beyond dispute that where a claimant is unable to return to his or her time of injury employment, there is a loss of earning power." (PATLA Br. at 11.)

5. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.1, 2501–2626.

improvement and could, at best, work only at the light duty level. Claimant argues that he, like the claimant in *Petrone*, also worked at a strenuous job, was injured as a result of his employment, that this injury prevents him from returning to work, and that he has no training to do any other type of work. Accordingly, Claimant argues that he is entitled to benefits.

Claimant contends that this Court, in *Weis*, "has retreated almost 40 years to a point before the Supreme Court's decision and holding in *Petrone* by requiring that one must be **entirely** removed from the work force." (Claimant Br. at 17.)

Claimant also argues that the *Weis* decision is inconsistent with Act 57's inclusion of an offset for pension benefits. Claimant cites to *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corporation)*, 584 Pa. 309, 883 A.2d 518 (2005), but does not address how this supports his argument, other than to note that it is a pension offset case.[6] Claimant also cites to the Social Security Act and its requirements for obtaining disability benefits, and federal precedent applying it, but does not explain the relevance of that authority to this proceeding.[7] Claimant seems to only mention it for the point that "*Weis* is so contradictory to the remedial nature of the Workers' Compensation Act that it has created a standard greater than the Social Security Disability Benefits definition when an injured worker takes a pension."

---

**6.** PATLA develops this argument further. PATLA notes that "the General Assembly felt an urgent need to include an offset for pension benefits in Act 57 of 1996." (PATLA Br. at 15.) PATLA argues that the General Assembly thought that "an injured worker would be dissuaded from attempting any return to work if full disability benefits were simultaneously paid. [The offset] was also supposed to reduce premiums and reserves necessary in cases where the injured worker had retired." (PATLA Br. at 15) (citation omitted). PATLA contends that:

> But if *Weis* is correct, then this was an illusory concern for the General Assembly. Few, if any, injured workers are totally unable to perform work in the labor market. Those workers might be uncompetitive in attempting to find work, but that does not mean they cannot perform some jobs that theoretically exist. Requiring the injured worker to prove that he or she cannot do anything in the entire work force will so severely restrict those eligible for both pension, whether retirement or disability, and workers' compensation makes the pension offset essentially meaningless.

(PATLA Br. at 15.)

**7.** PATLA also develops this argument further. PATLA notes that, as discussed in *Petrisek*, citing to *Kachinski*, the Supreme Court concluded that the Pennsylvania Workers' Compensation statutes provided an easier burden to meet to obtain workers' compensation benefits (that an injury causes loss of earning power), than the burden a claimant must meet under the Federal Social Security Act to obtain social security benefits (that the claimant is unable to perform "any substantial, gainful activity"). (PATLA Br. at 15–16) (citing *Petrisek*, 537 Pa. at 37, 640 A.2d at 1269.) PATLA contends that the General Assembly was aware of this lesser burden when it enacted the pension offset provision. PATLA argues that "[t]he inability to perform any substantial gainful activity does not mean that one is forced out of the entire labor market" but, that "[i]t is only a measure based upon one's age, education, past work experience and residual functional capacity of whether work exists in the national economy." (PATLA Br. at 16.) PATLA further contends that this Federal standard "does not require that the work actually exist in the immediate area where the person lives...." (PATLA Br. at 16.) PATLA notes that, in contrast, citing to *Kachinski*, the Act does "require[] that there be a job within the immediate area where the person lives, is vacant and that he or she would be hired if applied." (PATLA Br. at 16.) PATLA argues that to require a person who involuntarily retired because of a work injury to establish that he or she was forced from the entire labor market, "is contrary to the precedent *Weis* relies upon, contrary to the understanding of the General Assembly and contrary to the underlying principles of the ... Act." (PATLA Br. at 16.)

(Claimant Br. at 18.) Employer challenges these arguments.

We begin by examining the *Weis* decision.

In *Weis*, the claimant was a heavy construction equipment operator who sustained a left knee injury in 1981, for which the employer issued an NCP. For 20 years, the employer paid benefits. In 2001, the claimant filed retirement paperwork with his employer. On the paperwork, he indicated that his injury prevented him from returning to his time of injury position. Subsequently, the employer filed a Suspension of Benefits Petition, arguing that the claimant had voluntarily withdrawn from the workforce. At hearings before the WCJ on the petition, the claimant testified that he had not sought, and was not seeking, work and he indicated that he was unsure whether he could perform sedentary work. The WCJ found the claimant credible. The employer's physician, who the WCJ also found credible, opined that the claimant was capable of performing sedentary work. The WCJ denied the petition, concluding that the claimant was retired because his injury prevented him from returning to his pre-injury position. The WCJ also noted that the employer failed to present evidence that work was available to the claimant within his physical limitations. The employer appealed and the Board affirmed the WCJ. The employer appealed to this Court.

This Court noted that, generally, to obtain a suspension of benefits an employer must demonstrate suitable employment was made available to a claimant. *Weis*, 872 A.2d at 265 (citing *Kachinski*). The Court, citing Henderson, noted that our Supreme Court has made that rule inapplicable in cases where the claimant retires. Quoting Henderson, we stated:

It is clear that disability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement. The mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability. An employer should not be required to show that a claimant has no intention of continuing to work; such a burden of proof would be prohibitive. For disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury.

*Weis*, 872 A.2d at 265 (quoting Henderson, 543 Pa. at 79, 669 A.2d at 913).

We examined a number of cases, including *Petrisek*, and noted that "[n]o case provides that a claimant only is required to show he is forced out of his pre-injury job. Rather, each case that discusses this issue speaks in terms of the labor market." *Weis*, 872 A.2d at 265. Accordingly, we interpreted the phrase "forced into retirement" to mean that a claimant is required to demonstrate that he was forced out of the entire labor market, not just his pre-injury job. *Weis*, 872 A.2d at 265. We further noted that this conclusion was consistent with existing precedent, such as *Shannopin Mining Company v. Workers' Compensation Appeal Board (Turner)*, 714 A.2d 1153 (Pa.Cmwlth.1998). We note that, in *Shannopin*, we concluded that:

We recognize that there may be circumstances where a claimant may be forced to retire from his or her time-of-injury job due to a work-related injury, but may not be disabled from other type of work. In that situation, the claimant must show that he or she has not voluntarily withdrawn from the entire *labor*

*market* and is open to employment within his or her physical capabilities in order to be entitled to benefits under the [Act].

*Weis,* 872 A.2d at 266 (quoting *Shannopin,* 714 A.2d at 1155, n. 5). Applying this rationale to the facts of *Weis,* we concluded that claimant had failed to meet his burden that he had not withdrawn from the entire work force.

■ We find the *Weis* case factually on-point and its analysis determinative of the matter before us. We preliminarily note that, while Claimant extensively argues that this case marks a break from existing precedent, he fails to address the *Shannopin* case.[8]

■ "The rule of *stare decisis* declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different." *Commonwealth v. Tilghman,* 543 Pa. 578, 588 n. 9, 673 A.2d 898, 903, n. 9 (1996). Under *stare decisis,* we are bound to follow the decisions of our Court unless overruled by the Supreme Court or where other compelling reasons can be demonstrated. *Pa. Ass'n of Milk Dealers v. Pa. Milk Mktg. Bd.,* 685 A.2d 643 (Pa.Cmwlth.1996). The present case presents facts nearly identical to those addressed in *Weis.* This Court, in *Weis,* extensively addressed the applicable precedent binding upon this Court, and,

under the principle of *stare decisis,* we will not overturn that recent decision.

Applying the rationale of *Weis* to the facts of this case, we conclude that the Board appropriately reversed the WCJ. The Board correctly applied *Weis* to conclude that Claimant's testimony and medical evidence were insufficient to meet his burden. Claimant testified that he had not sought employment since he left his pre-injury position or since he retired. Claimant failed to offer any evidence that he was forced to withdraw from the labor market due to his work injury. By contrast, Employer's credited evidence established that Claimant is capable of performing light-duty work. Because Claimant could not satisfy his burden of proof, the WCJ properly granted Employer's suspension petition.

For the foregoing reasons, the order of the Board is affirmed.

### *ORDER*

**NOW,** July 25, 2006, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.

---

8. PATLA challenges this Court's reliance on its own precedent, arguing that "[i]t is the Supreme Court decisions which are controlling on this issue." (PATLA Br. at 9, n. 1.)