Elizabeth A. HIGGINS, Petitioner,

v.

PUBLIC SCHOOL EMPLOYES'
RETIREMENT SYSTEM,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 17, 1998.

Decided Aug. 13, 1999.

As Corrected Aug. 18, 1999.

William A. Hebe, Wellsboro, for petitioner.

David W. Speck, Harrisburg, for respondent.

Before FRIEDMAN, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

FLAHERTY, Judge.

Montgomery Area School District (School District) teacher, Elizabeth Higgins (Claimant), petitions this Court to review a decision of the Pennsylvania Public School Employes' Retirement Board (Board) which rejected the findings and recommendation of a hearing examiner (Hearing Examiner) to grant her multiple service. We reverse and order Board to grant her multiple service membership.

Here, Claimant is seeking an opportunity to elect "multiple service" under the Pennsylvania Public School Employees Re-

tirement Code[1] (Retirement Code) which, if permitted, will enable her to receive credit in her retirement account for over two years of previous employment with the Pennsylvania Department of Education (DOE). Her previous DOE service combined with twenty-three years of service and membership in the Pennsylvania Public School Employes' Retirement System (PSERS), will give her a sufficient amount of service (twenty-five years) to retire in 1999.

Claimant was a member of Pennsylvania State Employes' Retirement System (SERS or System) while employed by DOE from June 18, 1962 through July 22, 1964 (over two years). Claimant later became a member of PSERS on September 1, 1976, when she became a professional employee of School District where she has had continual service to date. As a PSERS member with past state service, under the definitions in 24 Pa.C.S. § 8102, Claimant qualifies to apply for multiple service, under which she could combine her credited service in both systems.[2]

School District's Business Manager (Business Manager) was involved in the hiring of Claimant, and testified that at the time Claimant was hired, and at no time since (until Claimant's present appeal) did he or School District know of School District's duty to provide notice of the right to elect multiple service. Consequently, School District did not inform Claimant of her right to elect multiple service membership, either upon her employment or at any time since.

Business Manager further testified that upon the hiring of Claimant in 1976, that Business Manager submitted Claimant's completed *single-sided* enrollment application to PSERS and it is highly relevant that the particular application provided by PSERS at that time did not provide any notice to Claimant of any 30–day provision to elect multiple service.[3]

---

1. 24 Pa.C.S. §§ 8101–8534.

2. Relevant Statutory definitions under the Retirement Code include:
   *24 Pa.C.S. § 8102. Definitions*
   "Multiple Service." Credited service of a member who has elected to combine his credited service in both the Public School Employees' Retirement System and the State Employee's Retirement System.
   "State Service." Service rendered as a State employee and credited as a service in the State Employees' Retirement System.
   "System," The Public School Employes' Retirement System of Pennsylvania as established by the act of July 18, 1917, (P.L. 1043, No. 343) and codified by the act of June 1, 1959 (P.L. 350, No. 77).
   *24 Pa.C.S. § 8502 Administrative Duties of Board*
   . . . .
   *(g) Performance of employer duties.* In the event the employer fails to comply with the procedures as mandated in section 8506 (relating to duties of employers), Board shall perform such duties and bill the employer who shall pay for the cost of the same. . .
   *24 Pa.C.S. § 8506. Duties of Employers*
   . . . .
   *(g) Former State Employee Contributors.* The employer shall, upon the employment of a former member of the State Employ-

ees' Retirement System ... advise such employee of his right to elect multiple service membership within 30 days of entry into the system ... The employer shall advise Board of such election.
   *24 Pa.C.S. § 8507. Rights and Duties of School Employees and Members*, include:
   *(a) Information on new employees.* Upon his assumption of duties, each new school employee shall furnish his employer with a complete record of his previous school or state service ... his current status in the system and in the State Employees Retirement System and such other information as Board may require...
   . . . .
   *(c) Multiple service membership.* Any active member who was formerly an active member in the State Employees' Retirement System may elect to become a multiple service member. Such elections shall occur no later than 30 days after becoming an active member in this system.

3. In 1976, PSERS did not have a practice of following up its receipt of the enrollment application with notice to new hires via a "welcome letter" or any other correspondence, newsletter, etc., containing such notice.

   Later, around 1983, PSERS provided *newly-hired* school employees with *different* enrollment applications which clearly set forth

Retirement Code specifies that eligible members must elect multiple service within thirty days of their entry into the System (election provision).[4] It is undisputed that PSERS did not enforce this election provision between 1976 and 1983. Between 1983 and June 30, 1985, PSERS implemented two successive grace periods that allowed all members to elect multiple service, despite having failed to do so within the first 30 days of entry into the System, regardless of whether or not the employer had notified the participant of the election provision.[5] PSERS published news of this grace period through one article in each of two newsletters.[6]

Thereafter, in the summer of 1995, while contemplating retirement, Claimant contacted PSERS' office in Williamsport by phone, and was informed that her past state service could be combined with her school service in order to provide an earlier retirement date. Claimant sent a letter, dated January 8, 1996 to PSERS, requesting information regarding purchasing credit for her past state service.

PSERS treated this letter as a request to elect multiple service, and denied the request on the grounds that the request was made more than 30 days following Claimant's entry into the System. Claimant requested review by the Appeals Committee of PSERS which informed Claimant that it had denied her request. Claimant then requested an administrative hearing, which was held before an independent Hearing Examiner on December 11, 1996.

After receiving testimony and evidence, Hearing Examiner made findings of facts and conclusions of law and, based upon the still-valid holdings in *Lincoln v. Wright*, 23 Pa. 76 (1854), wrote a lengthy, detailed opinion which recommended to Board that Claimant's request for multiple service be granted. PSERS filed exceptions to Hearing Examiner's recommendation and report, distinguishing the facts in *Lincoln* from the present case, proposing that the *Lincoln* decision (based upon the burden of a person to read every article in a daily newspaper) is substantially different from the burden of reading the ten-page PSERS newsletter mailed only periodical-

---

the 30–day provision. Additionally, around 1983, PSERS began a practice of mailing a "welcome letter" addressed personally to each newly hired employee, detailing the 30 day notice provision and enclosing an application for multiple service membership. These revised enrollment applications sent to new hires after 1983 provided, *on the reverse side* of the application, notice of the 30–day enrollment period to elect multiple service. The failure to provide proper notice is the controlling factual difference which causes the difference in the outcome between this case and the similar case, *Tyson v. Pennsylvania Public School Employees' Retirement System*, 737 A.2d 325 (Pa.Cmwlth.1999). In *Tyson*, the claimant was hired by that school district in 1985, at a time when the PSERS had updated their application forms and procedures to include sufficient due process notice via the "welcome letter."

4. 24 Pa.C.S. § 8507(c).

5. The grace period was originally scheduled to end June 30, 1984, but was extended to June 30, 1985.

6. Specifically, these notices in dispute include:

1) A 1983 PSERS newsletter entitled "Benefits Bulletin" was mailed in December 1983 to Claimant's address of record by bulk mail. Page 3 of this ten-page newsletter contained an article entitled *"Multiple Service Applicants Given Deadline of 30 Days."* The article contained information about applying for multiple service, and included information about the grace period; and

2) In February of 1985, PSERS mailed newsletters entitled "Retirement News," in bulk, this time *not* to the individual members named on the PSERS roster, but in bulk *to School District* requesting that School District distribute the newsletter. This 1985 newsletter contained an article on the first page of the ten-page newsletter entitled *"Multiple Service Deadline Extended."* Business Manager testified that School District distributed the February 1985 copies of "Retirement News" to its employee school mailboxes, including that of Claimant.

ly.[7]

On review, Board reversed the decision of Hearing Examiner and denied Claimant's request for multiple service.[8] From that decision of Board, Claimant's petition for review and the amicus brief followed.[9]

Claimant has specifically brought two issues before the court, to wit:

1) Where a statute mandates notice of an important legal economic benefit (here, it is an economic retirement benefit), but does not provide for a specific method of notice, is publication of one article in a ten-page member organization publication or newsletter, distributed periodically by bulk mail to each member or in bulk through employee mailboxes sufficient constructive notice to constitute constitutional due process; and

2) Did Board err in denying Claimant's request to become a multiple service member, when the request was made more than 30 days after Claimant became a public school employee, considering that both PSERS and School District initially failed to provide timely statutory notice and later attempted to provide notice only via articles in a newsletter? [10]

There are no cases recorded in the Commonwealth which address whether a man-

datory notice provision which is silent as to the form of notice is satisfied by the modern-day "newsletter." The Supreme Court of Pennsylvania has held that mere publication of an article in a daily newspaper violates due process and is insufficient legal notice because requiring individuals to read every article in a newspaper in order to protect their individual interests places too great a burden on citizens, who are entitled to statutory notice of procedures which impact their individual legal, economic, or property rights or interests. *Lincoln.* Since 1854, *Lincoln* has been the standard for notice provisions. Now, we must once again revisit the issue in light of the modern-day newsletter.[11]

## I. Retirement Code Notice Requirements

The Retirement Code mandates that an election of multiple service must be made by a new school employee within thirty days of entry into the System. 24 Pa.C.S. § 8507(c). This mandate cannot be read standing alone. In enacting the Retirement Code, the legislature has also mandated the election provision for newly hired public school employees or, upon employer's failure, the System shall thereafter so provide, thus constructively tolling the election provision notice until proper

7. Hearing Examiner's recommendation was based upon the Supreme Court's ruling in *Lincoln*, that a newspaper article is not sufficient notice, even where a statute does not specify the type of notice, and that, therefore, Claimant did not receive adequate legal notification of the 30 day grace period.

8. While the hearing examiner accepts evidence and makes a recommendation, it is the Board that is the finder of fact. *See Dowler v. Public School Employees' Retirement Board*, 153 Pa.Cmwlth. 109, 620 A.2d 639 (1993). Here, however, Board adopted the Findings of Fact made by Hearing Examiner while rejecting his Conclusions of Law.

9. Pennsylvania State Education Association (PSEA) (a labor organization representing teachers in Pennsylvania) filed an amicus curiae brief in support of Claimant's position.

10. In reviewing these issues, the governmental agency's determination, and the record below, this Court's appellate review is limited to determining whether an error of law was committed, whether there is substantial evidence to support the conclusions of law, or whether constitutional rights have been violated. *Finnegan v. Public School Employees' Retirement Board*, 126 Pa.Cmwlth. 584, 560 A.2d 848 (1989), *affirmed*, 527 Pa. 362, 591 A.2d 1053 (1991).

11. The precise holding in *Lincoln* was that a newspaper article is only sufficient notice if it is proven that the recipient actually read the article. In the present case, the hearing examiner relied on Lincoln and based his decision to grant multiple service membership on the testimony in the record where Claimant testified that she did not remember receiving any newsletters and that she never read any.

notice has been effected. 24 Pa.C.S. §§ 8502(g), 8506(g).

Claimant asserts that her failure to elect earlier was due to a failure by School District and System to provide her with the required election since the only notice intended for her was by way of articles in newsletters rather than by letter or other direct correspondence. PSERS contends that the two articles in the newsletters are sufficient notice under the Retirement Code.

■ It is undisputed that both School District and PSERS violated the Retirement Code when Claimant was hired by School District in 1976. The notice provision of the Retirement Code at 24 Pa.C.S. § 8506(g) is mandatory. The Retirement Code is designed so that if School District fails to provide the statutorily required notice, it becomes mandatory upon Board at some unspecified time thereafter to perform that function and to invoice School District, which is required to pay PSERS for the cost of providing that notice. 24 Pa.C.S. § 8502(g).

When Claimant was hired, School District was required by the Retirement Code to secure from Claimant her complete record of prior public school or state service and current status in both PSERS and SERS. 24 Pa.C.S. § 8507(a). The statutory election provision then provides for the local school employer to provide the new employee with the notice that he or she must elect multiple service within 30 days. If the election is made, the information about prior service is passed along to Board and, ultimately, to System so that the multiple service member can properly secure credit for the prior service. 24 Pa.C.S. § 8506(g).

■ The statutory scheme failed in the instant case because School District failed to provide the notice of the 30–day election "window," as did Board. Board, in its decision denying Claimant multiple service membership, places the consequences of School District's and Board's statutory vio-

lations at the doorstep of Claimant. When governmental entities fail to carry out mandatory statutory duties, however, the result of that failure should not be laid at the feet of a person who is entitled to be the recipient of that duty. Rather, justice and fairness require that the person protected by the statute, here the claimant, be given the opportunity to take advantage of the statutory right conferred upon her, such as, in this case, to become a multiple service member. *See Mullen v. Dubois Area School District,* 436 Pa. 211, 259 A.2d 877 (1969).

There is no explanation on record why, prior to 1983, PSERS failed to implement procedures to provide notice of the 30–day election requirement. No statute or regulation authorized or permitted System to ignore the statutory notice requirement.

Board argues that those years of statutory violations were *cured* by its unilateral decision to confer a "grace period" with regard to those persons who had prior state service and had not elected multiple service membership. There existed, however, no specific statutory or regulatory authorization for Board to even confer such a "grace period," although administrative law generally provides for agencies to implement procedures to carry out its statutory duty. Assuming that implementing such a grace period is permitted, however, and that such a grace period "cures" the prior, ongoing ignorance of the notice provisions of the Retirement Code, in order for the "grace period" to actually remedy the situation, the notice provisions of the Retirement Code must still be met. PSERS contends they were. We disagree.

When PSERS decided to begin enforcing the notice provision around 1983, it attempted to provide members an opportunity to elect multiple service regardless of how long they had been in the System and whether or not they had received notice from their employers. Unfortunately PSERS chose to give notice of this valuable right by sending newsletters, first directly to members by bulk mail in 1983

and then in bulk to school districts in 1985, rather than a first class mail letter with limited topics individually addressed to its members. Although each newsletter contained several articles on various topics including one on the ability to apply for multiple service, neither were ever actually read.[12] In addition, School District, by its own admission, failed to provide Claimant with any type of individual notice of this valuable right at any time. Thus, neither PSERS nor School District provided Claimant with the proper notice required by the Retirement Code.[13] *Lincoln.*

## II. Sufficient Legal Notice Required to Trigger Statute Provisions

■ When a statute prescribes a method of notice, that method is exclusive. *In re Elfman,* 212 Pa.Super. 164, 240 A.2d 395, 396 (1968). In this instance, however, the Retirement Code does not specify any method in its notice requirements relating to eligible multiple service members. There is also no remedy provided for an employer's failure to provide the mandatory statutory notice other than to pay for an additional notice to the employee from the Board.

Although the Retirement Code at 24 Pa.C.S. § 8507(c) initially mandates that the employee *shall* make an election within 30 days, the Retirement Code at 24 Pa. C.S. § 8502(g) clearly provides for Board to grant multiple service after 30 days, because that section (on notice by Board) is not operative until the initial 30 day period for employer to give notice has expired and the employer School District has been given an opportunity to fail in its responsibility to provide the statutory notice. Thus, the seeming mandatory 30 day language of Section 8507(c) is, in actuality, only conditional when the entire statute is considered as a whole.

■ Therefore, the obvious meaning of Section 8507(c) is that after the employee receives proper notice (either actual or constructive) from either the employer in the first instance or the Board thereafter, she has 30 days to elect to become a multiple service member.

## III. Manner of Notice

Unfortunately, the notice provisions in the Retirement Code also fail to state the manner and content of the notice.

■ If a statute does not prescribe a specific type of notice, then actual or constructive notice is required. *Borough of Bridgewater v. Pennsylvania Public Utility Commission,* 181 Pa.Super. 84, 124 A.2d 165 (1956). The Superior Court, in *Bridgewater,* held that in the absence of specific statutory notice provisions, what is required of a governmental unit is that which is sufficient to provide the person to be notified with actual or constructive notice of his or her rights.[14]

---

**12.** Claimant testified and Board adopted the Hearing Examiner's Finding of Fact that Claimant never actually read the articles in the newsletters.

**13.** This rationale is not contrary to the holding of the Pennsylvania Supreme Court in *Finnegan,* or that of this Court in *Cosgrove v. State Employes' Retirement Board,* 665 A.2d 870 (Pa.Cmwlth.1995), where PSERS members were provided inadequate, inaccurate or no information upon which the individuals based their respective decisions to retire, causing each of them to receive less benefits than they would have received if correct information on their benefits had been provided to them. In *Finnegan* and again in *Cosgrove,* the courts held that the board cannot be es-

topped from applying the statutory provisions of the Retirement Code and required Board to enforce the provisions of the Retirement Code. By following the provisions of the Retirement Code in those cases, the members received less benefits than PSERS had calculated and predicted to the employee. In the present instance, we are equally enforcing the Retirement Code with respect to another provision, however, that is, the one requiring notice by School District and PSERS.

**14.** The *Bridgewater* court was interpreting 66 P.S. § 1393(a), which governed certain Public Utility Commission hearings and has since been consolidated as 66 Pa.C.S. § 703(b), which reads, in relevant part, "[t]he commission shall fix the time and place of hearing...

In the present case, Hearing Examiner determined that interpreting the doctrine of statutory notice and the *Bridgewater* case together leads to the conclusion that the Retirement Board must provide a potential multiple service member upon employment, or within a reasonable time thereafter, actual or constructive notice of the member's right to elect multiple service within 30 days of employment and recontribute withdrawn contributions.

Hearing Examiner found that the timeliness requirement was not met in the instant case as admittedly there was no actual or constructive notice given to Claimant upon commencing her employment at School District in 1976 and that the subsequent notices via the newsletter were insufficient to constitute actual or constructive notice. PSERS argues, however, that Claimant had an opportunity to elect multiple service through the grace period it offered between 1983 and 1985, that important information is transmitted via the newsletters, that members have a duty to read the newsletters, and that this opportunity corrected any failure to previously provide notice. We disagree.

While the grace period was apparently not limited to members who had not been given timely notice, its effect was to give such members a chance to receive the benefits of multiple service. What PSERS provided through the grace period was no less than what Claimant asks of Board and of this Court today: an opportunity to elect multiple service and repurchase withdrawn credits.

If Claimant received actual or constructive notice of the grace period, her appeal would fail because she would have been given what the Retirement Code requires, a genuine opportunity to participate in multiple service. Her failure to follow through on this chance would have constituted a choice to decline such benefits. The Retirement Code only mandates one chance to elect multiple service. To give Claimant more than one such chance

and shall serve notice thereof upon parties in

would be to go beyond the Retirement Code.

Without notice, of course, the grace period opportunity would be illusory, as Claimant would still not have been informed of her right to elect multiple service. As proof of such notice, PSERS offered the two newsletters. Each contained one article discussing the right of potential multiple service members to elect such service during the grace period and informing readers how to make an election. Hearing Examiner found that the 1983 newsletter was "bulk mailed" to Claimant at her last known address and the 1985 newsletter was distributed to School District and put in the employee's mailbox and actually received by Claimant. (R.R. at 84a.)

■ However, Claimant testified that she never read the newsletters and/or the articles in them regarding multiple service and, therefore, there is no evidence of actual notice. Further, the mere receipt of a ten-page newsletter containing general employment information without evidence of actually reading the required notice is not sufficient to satisfy the constitutional due process requirement of *Lincoln*.

### IV. Bulk Mail Newsletters as Constructive Notice

Claimant need only be notified once under the Retirement Code. In order for Claimant to prevail, therefore, both the 1983 and the 1985 newsletter communications must be insufficient notice. The U.S. Supreme Court has addressed what is reasonable notice to constitute due process of law. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The Supreme Court in *Mullane* held that a reasonable and, therefore constitutionally valid method for notice is a direct notice that is reasonably certain to inform those affected, or, where conditions do not reasonably permit direct

interest."

notice, the form of notice chosen should be a feasible and customary method which is more likely (or at least as equally likely) to provide notice than those methods which were not chosen. *Mullane*, 339 U.S. at 315, 70 S.Ct. 652.

█ In an administrative proceeding, the right to due process is as equally applicable to administrative agencies as it is to judicial proceedings, where the fundamental requirements of due process are notice and opportunity to be heard in a meaningful manner. *Gombach v. Department of State, Bureau of Commissions, Elections and Legislation*, 692 A.2d 1127 (Pa. Cmwlth.1997) (applying Pa. Const. art.1, § 1). For administrative actions, this Court has held that notice requirements are satisfied when proper notice of the action is *mailed* to an interested party's last known address. [Emphasis added]. *Milford Twp. Board of Supervisors v. Department of Environmental Resources*, 165 Pa.Cmwlth. 14, 644 A.2d 217, 218 (1994).[15]

█ Newsletters mailed as bulk mail should be discouraged as constituting notice of a statutorily protected economic benefit or right, unless, of course, there is proof of actual reading thereof or express authority from the Legislature or the Supreme Court. The United States Supreme court has not differentiated between ordinary (first-class), certified, and registered mail for purposes of due process sufficiency, although occasionally ordinary mail is

insufficient if it can be proven that ordinary mail would be unreliable service on the defendant or a significant portion of a class of defendants. There are no U.S. Supreme Court cases dealing with bulk mail as sufficient notice.[16]

In addition, currently, there are no Pennsylvania cases which determine whether bulk mail transmissions generally satisfy notice requirements. Most federal cases which have had to determine what is sufficient notice to a class of persons in class action litigation have adopted criteria similar to the "Best Notice Practicable" concept developed under F.R.C.P. No. 23(C)(2)[relating to notices to class participants in federal class actions].[17]

Federal courts have prohibited the use of third-class (bulk) mail as sufficient legal notice because the postal service does not return undelivered bulk-rate mail to the sender (and even first class mail if mailed at the discounted bulk rate). Consequently, the reliability of receipt by the person who is required to be put on notice is always suspect when using any class of mail which does not provide for the return of undelivered mail to the sender.

The federal concept of "Best Notice Practicable" provides that the most direct and informative method of notice be used, i.e. if the names and addresses of the persons to be provided notice are ascertainable (not just readily available), then specific notice is to be provided to each of them by first-class mail. Some federal courts have required certified mail where

---

15. In *Milford*, the Court reiterated its previous holding that constitutionally adequate notice of administrative action is notice which is reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Citing Clark v. Department of Public Welfare*, 58 Pa.Cmwlth. 142, 427 A.2d 712 (1981). This requirement is satisfied when notice of the action is mailed to the interested party's last known address. *Kobylski v. Milk Marketing Board*, 101 Pa.Cmwlth. 155, 516 A.2d 75 (1986), *overturned on other grounds by Slawek v. State Board of Medical Education and Licensure*, 526 Pa. 316, 586 A.2d 362 (1991).

16. For complete discussion, *see annotation at:* Klein, Daniel A., J.D., *Necessity and Sufficiency of Service of Process Under Due Process Clause of Federal Constitution's Fourteenth Amendment—Supreme Court Cases*, 100 L.Ed.2d 1015 (Lawyers Co–Op.1990).

17. For a complete discussion of this concept, *see annotation at:* Robeson, Marcia G., J.D., *What Constitutes "Best Notice Practicable," Required by Rule 23(c)(2) of Federal Rules of Civil Procedure in Class Actions Brought Under Rule 23(b)(3)*, 32 A.L.R. Fed. 102 (Lawyers Co–Op 1977).

the benefit or interest was paramount to the class participant (securities, shareholders, etc.). Bulk mail has apparently never been approved, even where the cost of first-class mail was prohibitive.

## V. Newsletters as Notice by Publication

The U.S. Supreme Court has long adhered to a rule that notice by publication satisfies due process under circumstances in which another, more direct form of notice cannot reasonably be given, such as where the name or address of an interested party is unknown and not reasonably ascertainable, or where a party's interests are conjectural or future.[18]

While the majority of cases on notice-by-publication deal with publication in newspapers of general circulation and not with newspapers or newsletters delivered directly to the interested party, the U.S. Supreme Court has held notice to be insufficient due process where the notice does not contain, *inter alia*, the name of any interested party, although the name is reasonably ascertainable. *Schroeder v. New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962). More importantly, the U.S. Supreme Court has held that publication alone does not satisfy the due process rights of interested parties where other means, which are more likely to attract the parties' attention are reasonably available. *Mullane.*

Regarding newsletters as a means of effective notice, the most similar holding in Pennsylvania involves the decision in *East Suburban Press, Inc. v. Penn Hills Township*, 40 Pa.Cmwlth. 438, 397 A.2d 1263 (1979), where "The Green Tab," a free publication, sent less than second-class mail to households in Western Pennsylvania, was not considered a "Newspaper of General Circulation" for the purposes of being able to provide legal notice, not only because there were no "subscribers," but also because of the low-class transmission of the paper through the postal system via third class (bulk) mail, which provides an unreliable standard of delivery.

Newsletters are a modern day limited version of the newspaper, containing several articles intended for an audience of more than one person. Newspapers are disfavored as means of providing notice. In *Lincoln,* the Pennsylvania Supreme Court laid down a rule that survives today: articles in newspapers usually cannot provide constructive notice, and can only provide actual notice if proven to have been read.[19] Even when a newspaper is specified as a permitted form of publication, however, it must be by a "newspaper of general circulation."[20]

The U.S. Supreme Court has repeatedly held that the determination of whether notice by publication in a newspaper satisfies an individual's due process rights is determined by balancing the state's interest against the individual's interest sought to be protected. *Mullane.* In the present instance of publication in a newsletter, the legislature attempted to protect the indi-

---

18. For a complete discussion of this subject, see *annotation at:* Klein, Daniel A., J.D., *Notice by Publication as Sufficient to Comply with Due Process Requirements Under Federal Constitution's Fourteenth Amendment—Supreme Court Cases*, 99 L.Ed.2d 1029 (Lawyer's Co-op 1990).

19. Newspapers, may however, be prescribed by legislation as a form of notice by publication, such as that mandated by the Sunshine Act, 65 Pa.C.S. §§ 701–716, which, for example, requires government agencies to place notices of the board meetings in newspapers. These mandated notices are published in a section of the newspaper captioned "Legal Notices," which caption provides further notice to the public to look in this section for notices which affect their individual and/or collective legal rights. Also this public notice section of a newspaper of general circulation makes information of public interest available to other newspapers and organizations. Although the Retirement Code contains no provision allowing PSERS to use a newsletter or newspaper as a means of conveying notice, the means chosen did not provide proper notice intended by the Code.

20. *See* Newspaper Advertising Act, 45 Pa.C.S. §§ 101–310.

vidual by insuring that the state would bear no cost to inform a newly hired employee of the 30 day window to elect multiple service since, if the PSERS was required to notify any member of the 30 day window, all such costs would be borne by the employer school district under 24 Pa. C.S. § 8502(g).

Thus, since PSERS had access through the school district Employer to all of the members' names and addresses and knew, or could easily ascertain, that none of the members had been notified because the notification provision was not being enforced, there was no rational basis or legitimate reason why PSERS could not provide personalized notice via first class mail to all members and pass the cost on to School District, pursuant to the Retirement Code.

Consequently, although the 1983 newsletter entitled "Benefits Bulletin" may have been delivered to Claimant's address by bulk mail and the article on multiple service was referred to generally on page one of that newsletter, the required notice to Claimant was located within the article, which was printed among the inner ten pages of information, but there was no evidence contradicting Claimant's testimony that she did not read it if she received it.

Likewise, although the article on multiple service was on page one of the 1985 newsletter entitled "Retirement News," it was sent in bulk, not first class mail and not to the individual members but was sent to School District to distribute to its employees and although the School District did not know it was required to give notice to its employees of the right to elect multiple service membership, there was testimony that the School District placed it in the employees' mailboxes, but there was no testimony indicating that Claimant ever received it or read it.

There is, therefore, no proof that Claimant had actual notice of the 30-day statutory period to elect multiple service membership from either newsletter. Further, neither newsletter was individually addressed and sent by first class mail or otherwise delivered to the Claimant's last known address in a manner which would give rise to a presumption that it was received, thereby eliminating method of delivery as an issue. *Department of Transportation, Bureau of Driver Licensing v. Whitney*, 133 Pa.Cmwlth. 437, 575 A.2d 978 (1990). The newsletters here were not sent in a manner that would constitute sufficient legal notice, especially when such an important economic benefit, such as a retirement benefit, is at issue. Therefore, the order of the Pennsylvania Public School Employes' Retirement System is reversed, and Board is ordered to grant Claimant, Elizabeth Higgins, multiple service, as requested.

### O R D E R

AND NOW, this 13th day of August, 1999, in the above captioned matter, the January 28, 1998 Order of the Commonwealth of Pennsylvania Public School Employes' Retirement Board at its docket 1996–22 is REVERSED.

It is hereby ORDERED that the Petitioner, Elizabeth A. Higgins be granted multiple service membership and that she be afforded the opportunity to be credited with her previous service with the Department of Education in accordance with the attached opinion.