# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan S. Osgood, : 
      : 
           Petitioner : 
      : 
           v. : No. 2003 C.D. 2014
      : Argued: September 14, 2015
Public School Employees' : 
Retirement Board, : 
      : 
           Respondent : 

BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                 HONORABLE MARY HANNAH LEAVITT, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                            **FILED:  October 30, 2015**

Retired Gateway School District teacher, Susan S. Osgood (Petitioner), petitions for review of a decision of the Pennsylvania Public School Employees' Retirement Board (Board), which adopted the opinion and recommendation of a hearing examiner (Hearing Examiner) denying her request to elect multiple service membership.  We affirm.

Petitioner was a member of the Public School Employees' Retirement System (PSERS), employed in the Gateway School District from August 1988 until her retirement in January 2011.  (Hearing Transcript (H.T.), Reproduced Record (R.R.) at 33.)  She was previously employed with Pennsylvania State University (PSU), from May 1973 until February 1982.  (H.T., R.R. at 32.)  While

at PSU, Petitioner was a member of the State Employees' Retirement System (SERS), and when Petitioner terminated service with PSU, the contributions and interest she had contributed into SERS were refunded to her. (H.T., R.R. at 46, 65-66.) On December 22, 2010, one month prior to her 2011 retirement, Petitioner made a request to PSERS to purchase uncredited service for time she was employed at PSU; the request was denied as untimely and Petitioner appealed to the Executive Staff Review Committee of PSERS, which also denied her request. (PSERS Exhibits 3-4, R.R. at 135-137, 139-142.) Petitioner appealed, and received a hearing before a Hearing Examiner on October 30, 2013. (H.T., R.R. at 25-101.) At the hearing, Petitioner testified on her own behalf and John Tucker, Communications Manager, Field Services Division (Tucker) testified for PSERS.

On May 22, 2014, the Hearing Examiner filed an opinion and recommendation that Petitioner's request to elect multiple service credit should be denied as untimely. (Hearing Examiner Opinion and Recommendation (H.E. Op.), R.R. at 240-263.) Petitioner appealed, and on October 7, 2014, the Board issued its Opinion and Order, in which it corrected several of the Hearing Examiner's findings but otherwise adopted the opinion and recommendation, and denied Petitioner's request as untimely. (Board Opinion and Order (Board Op.), R.R. at 264-266.) Petitioner timely appealed the Board's Order to this Court.[1]

---

[1] This Court's review of a decision of an administrative board's final adjudication is limited to a determination of whether the adjudication is supported by substantial evidence, whether it accords with the law and whether constitutional rights were violated. *Larsen v. State Employees' Retirement System*, 22 A.3d 316, 322 n.4 (Pa. Cmwlth. 1995).

On May 17, 2001, an amendment to the Public School Employees' Retirement Code (Retirement Code),[2] the Act of May 17, 2001, P.L. 26, No. 9 (Act 2001-9), opened a window for active members of PSERS who were former active members of SERS and whose service credit in SERS had not been converted to service credited in another pension plan or retirement system in Pennsylvania to elect to become multiple service members. Act 2001-9 also provided an opportunity for PSERS members to elect a new Class T-D membership in order to enhance their benefits levels, and reduced the number of eligibility points for an active or inactive member to become vested in PSERS from 10 years to 5 years. (May 22, 2014 Hearing Examiner's Opinion and Recommendation (H.E. Op.), Findings of Fact (F.F.) ¶¶5-6, R.R. at 243.) Before this Court, Petitioner argues that PSERS failed to provide her with notice of the opportunities provided by Act 2001-9, thereby foreclosing her of the opportunity to purchase the years of service rendered as a PSU employee.

The Retirement Code mandates that former SERS members be notified of the right to elect multiple service membership. 24 Pa. C.S. § 8506(g). Section 8506 (g) states:

> (g) Former State employee contributors. –The employer shall, upon the employment of a former member of the State Employees' Retirement System who is not an annuitant of the State Employees' Retirement System, advise such employee of his right to elect multiple service membership within 365 days of entry into the system and, in the case of any such employee who so elects has withdrawn his accumulated deductions, require him to restore his accumulated deductions as they would have been at the time of his separation had he been a full coverage member, together with the statutory interest for

---

[2] 24 Pa. C.S. §§ 8101-8535.

3

all periods of subsequent State and school service to date of repayment. The employer shall advise the board of such election.

24 Pa. C.S. § 8506(g). Under Act 2001-9, the window during which qualified members of PSERS could elect multiple service membership was between July 1, 2001, the effective date of Act 2001-9, and December 31, 2003. Where the employer fails to provide such notice, the Board is required to do so. 24 Pa. C.S. § 8502(g).

The Hearing Examiner's findings of fact, as modified by the Board, established that Petitioner was among the active members of PSERS to whom PSERS sent a "Summary of Legislation" letter in May, 2001 following the enactment of Act 2001-9; the letter included an "Act 2001-9 PSERS Membership Class Election Form" (Election Form) and was sent to Petitioner at the address where she had lived for twenty years, by first class mail, postage prepaid and was not returned to PSERS as undeliverable. (H.E. Op., F.F. ¶¶10-11, 40, R.R. at 244, 251.) The Summary of Legislation clearly stated that the opportunity to elect multiple service membership would be expanded by the new law, and that current PSERS members who had not already elected multiple service membership would have a window from July 1, 2001 through December 31, 2003 to apply for multiple service membership. (Exhibit PSERS-5a, R.R. at 144-145.) The Election Form included in this mailing provided for the change to the new Class T-D membership,[3] and also contained a box entitled "Multiple Service Information Request (Optional)" that states:

---

[3] The Election Form indicates, *inter alia*, that by electing to change to Class T-D membership status, the elector will increase her employee contribution rate by 1.25% as of January 1, 2002 and will increase her retirement benefit calculation multiplier to 2.5% for all school and intervening military service. (H.T., Exhibit PSERS-18, R.R. at 126.)

4

Check this block if you believe you have or had service under the State Employees' Retirement System (SERS), for example, Health and Welfare, Department of Labor and Industry, Penn DOT. PSERS will mail additional information about combining your PSERS and SERS service to become a multiple service member.

If you are currently a multiple service member, do not request this information.

(H.T., Exhibit PSERS-18, R.R. at 126.) Petitioner denied receiving the May 2001 mailing. (H.T., R.R. at 33.)

The Hearing Examiner's findings further establish that in June 2001, a third party contractor with PSERS, Election.com, sent a letter to active contributing members of PSERS, which also included the Election Form. (H.E. Op., F.F. ¶12, R.R. at 244, Board Op., R.R. at 265, H.T., Exhibit PSERS-6a, R.R. at 149-153.) Page three of the letter contains the following language with respect to the extended opportunity to elect multiple service membership:

Multiple Service membership combines noncurrent service credited with SERS and PSERS. Examples of SERS service include employment with a Commonwealth agency (such as employment with the PA Department of Welfare, Transportation, Health, Labor and Industry), *a state owned educational institution, Pennsylvania State University, or a community college*.

(H.T., Exhibit PSERS-6a, R.R. at 151) (emphasis provided.) Petitioner testified that she does not recall receiving this mailing.

As further set forth in the Hearing Examiner's findings of fact, in September 2001 all of the information contained in the June 2001 letter was re-sent, marked "Second Notice," again by SERS' third party contractor to active contributing members of PSERS who had not responded to the June 2001 mailing.

5

(H.E. Op., F.F. ¶ 18; H.T., Exhibit PSERS-7a, R.R. at 159-162.) The Hearing Examiner further found that (i) the May 2001, June 2001, and September 2001 mailings were sent to Petitioner by first class mail, postage prepaid at her address and were not returned to PSERS as undeliverable (H.E. Op., F.F. ¶¶ 11, 14, 19). The Hearing Examiner found that on November 30, 2001, PSERS sent to Petitioner, by first class mail, postage prepaid, a reminder letter regarding her lack of response to previous mailings, including another Election Form, which was not returned to PSERS as undeliverable (H.E. Op., F.F. ¶¶ 20-21). Finally, the Hearing Examiner found that in December 2001, PSERS mailed a "Final Notice" to Petitioner, first class mail, postage prepaid, regarding her lack of response to previous mailings, and reminding her that she had until December 31, 2001 to elect Class T-D membership; this notice was not returned as undeliverable. (*Id*., F.F. ¶¶ 22-23.) Petitioner also denied receiving the September and December mailings; before the Hearing Examiner, she allowed that page two of the November letter (containing benefit calculations) looked familiar, and it was possible that she had seen it before. (H.T., R.R. at 50.)

The Hearing Examiner also found that records on file at PSERS indicate that Petitioner was among the list of active members of PSERS who were mailed, via USPS bulk mailing, a copy of PSERS' 'Summer 2001 Retirement Chalkboard,' a news publication with a two-page article devoted to an overview of Act 2001-9 and explanation of multiple service election, as well as Fall 2001, Spring 2002, Summer 2002, Fall 2002, Winter 2002, Summer 2003 and Fall 2003 editions with substantially similar content and information. (H.E. Op., F.F. ¶¶ 27-37, R.R. at 248-250.) Petitioner did not recall receiving any of this information in the mail, although she acknowledged that she "may have deemed them not relevant

to [her] because [she] wasn't anywhere near retirement." (H.T., R.R. at 56-58, H.E. Op., F.F. ¶ 42, R.R. at 251.)

On December 20, 2001, Petitioner executed and returned the Election Form in which she elected Class T-D Membership, but did not check the box to request multiple service information. (*Id.*, H.E. Op., F.F. ¶ 24.) The Hearing Examiner questioned Petitioner about filling out the form and about whether Petitioner had read the entire form. Petitioner indicated that she would have read the section about multiple service, but stated that it was her belief that she belonged to the same retirement system at both Gateway and PSU, she did not know what retirement system she had paid into while at PSU, and since the form did not list other schools, it would not have occurred to her to question whether she was a member of PSERS during her time there. (H.T., R.R. at 32, 53-54.)

Petitioner argues that the record does not reflect sufficient evidence on which to base the Board's presumption that PSERS mailed correspondence to her regarding her right to elect multiple service, because no witness with the required knowledge testified that the letters were mailed. We conclude, however, that at least with regard to the May, November, and December 2001 mailings that were sent not by the third party contractor but by PSERS, the testimony and documentary evidence presented by PSERS meet the evidentiary predicate necessary for the application of the common law "mailbox rule" presumption of receipt. In order for the presumption of receipt of a letter to be triggered, "the party who is seeking the benefit of the presumption must adduce evidentiary proof that the letter was signed in the usual course of business and placed in the regular place of mailing." *Commonwealth of Pennsylvania v. Thomas*, 814 A.2d 754, 758 (Pa. Super. 2002). As Pennsylvania courts have explained, "evidence of actual

mailing is not required," *Commonwealth Department of Transportation v. Brayman Construction Corporation*, 513 A.2d 562, 566 (Pa. Cmwlth. 1986), but "when a letter has been written and signed in the usual course of business and placed in the regular place of mailing, evidence of the *custom of the establishment as to the mailing of such letters is receivable as evidence that it was duly mailed*." *Christie v. Open Pantry Food Marts Inc. of Delaware Valley*, 352 A.2d 165, 166-67 (Pa. Super. 1975) (emphasis added).

PSERS made the required showing for the mailbox rule presumption. Tucker testified that although he had left employment with PSERS at the time the notices were sent out,[4] he was familiar with PSERS' business practices because since his return to employment with PSERS, and over the last eleven years, he had seen thousands of accounts and "had [his] hands and eyes" on "all of the documentation that members did return to PSERS." (H.T., R.R. at 73.) He explained that PSERS maintains, in the ordinary course of business, a microfilm record of the members to whom the May 2001 mailing, as well as other mailings, were sent, and identified the actual page that identified Petitioner by name and address as among the then-active member of PSERS to whom the May 2001 mailing would be sent. (*Id*., R.R. at 74; Exhibit PSERS-5b, R.R. at 147.) Tucker testified further that *any* mailing returned to PSERS as undeliverable would have been documented in the particular member's file, and stated that he had reviewed Petitioner's file and found no notice therein regarding the return of undeliverable

---

[4] Tucker testified that he began employment at PSERS in 1996, left PSERS in 1999 and returned to employment there in 2002, with the job of processing disability retirements. (H.T., R.R. at 61.) Tucker further testified that he was promoted to the position of retirement administrator overseeing refunds and the purchase of service departments in 2003, and in 2005, was promoted to senior benefits administrator overseeing retirements, purchase of service, and refunds; in 2009 he assumed his current position as Communications Manager at PSERS. (*Id*. at 61-62.)

8

mail. (H.T., R.R. at 75.) As discussed in the Hearing Examiner's opinion, although Tucker was not employed by PSERS at the time when the notices were sent out, he had both access to PSERS' records and familiarity with Act 2001-9 as well as the notices and mailings that were sent to members regarding the Act, having reviewed thousands of accounts since 2002 and the documentation that members returned to PSERS, as well as having reviewed Petitioner's file at PSERS. (H.E. Op. at 19-20.) Moreover, Petitioner admittedly read, executed and returned the Election Form, which PSERS included in the May 2001 mailing and re-sent in November 2001 and December 2001.

We also reject Petitioner's contention that these three letters were inadequate because they failed to mention employment with PSU as an example of SERS service, and thus could not have alerted her that her prior service at PSU was not under SERS. The contents of the May 2001 mailing provided the recipient notice that "[e]ffective July 1, 2001, the opportunity to elect Multiple Service membership (members who elect to combine benefits in the PSERS and the State Employees' Retirement System) will be expanded," and stated that current members who had not already elected multiple service membership would have a window from July 1, 2001 through December 31, 2003 to apply. (H.T., Exhibit PSERS-5a, R.R. at 145.) PSERS has adequately proven that the May 2001 mailing was initiated and mailed to Petitioner at her address of record, and that it was not returned as undeliverable. Accordingly, we conclude that Petitioner was properly notified of the opportunity to elect multiple service.[5] While, as she

---

[5] The Retirement Code does not specify the method of notice of the right to elect multiple service membership. In *Higgins v. Public School Employees' Retirement System*, 736 A.2d 745, 751 (Pa. Cmwlth. 1999), this Court determined that in the absence of specific statutory notice provisions, what is required of a governmental unit is that which is "sufficient to provide the person to be notified with actual or constructive notice of his or her rights". Notice sent by first-

9

testified before the Hearing Examiner, Petitioner did not believe that she had belonged to another retirement system while at PSU and she relied upon information from other teachers that she could purchase service time from PSU up until the time of her retirement, PSERS was under no obligation to explain to Petitioner that former employees of PSU were in the category of employees who could elect multiple service. As the Hearing Examiner noted, "[t]hat [Petitioner] did not request additional information about multiple service membership on [the Act-2001 PSERS Membership Class Election Form] merely supports her testimony that she believed she had until she retired to buy back her Pennsylvania State University service." (H.E. Op., R.R. at 259-261.) The Board properly determined that PSERS gave adequate notice and properly denied Petitioner's request to elect multiple service membership after the deadline, as untimely.

_____
**JAMES GARDNER COLINS, Senior Judge**

Judge Simpson did not participate in the decision in this case.

---

class mail to a members last known address is deemed sufficient notice under the law to satisfy the notice requirement for PSERS members. *Higgins*, 736 A.2d at 753.

10

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Susan S. Osgood, :
:
Petitioner :
:
v. : No. 2003 C.D. 2014
:
Public School Employees' :
Retirement Board, :
:
Respondent :

# **O R D E R**

AND NOW, this 30th day of October, 2015, the order of the Public School Employees' Retirement Board docketed at No. 2012-42 and dated October 7, 2014 is hereby AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**