IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Century III Mall PA., LLC,        :
               Appellant    :
                        :
         v.                  : No. 911 C.D. 2024
                        : Argued: May 6, 2025
West Mifflin Borough and      :
West Mifflin Borough Council    :

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                           FILED: June 11, 2025

       Century III Mall PA., LLC (Owner) appeals from the June 10, 2024 order of the Court of Common Pleas of Allegheny County (Common Pleas) affirming the June 14, 2023 Adjudication of the West Mifflin Borough (Borough) Council (Council), which concluded Owner's property in the Borough, comprising a shopping mall structure commonly known as the Century III Mall (the Mall), was a public nuisance and which ordered the Borough to abate this nuisance by razing the Mall. On appeal, Owner alleges Council violated Owner's due process rights and substantial evidence does not support Council's findings. Upon careful review, we affirm.

## I.    Background

The parties do not dispute that the Mall has been in disrepair for many years. In February 2018, the Borough discovered significant flooding from burst sprinkler system pipes in an isolated portion of the Mall where Owner had turned off the heat. *See* Reproduced Record (R.R.) at 175a.  In September 2018, the Borough cited and fined Owner for failing to mow and maintain the property surrounding the Mall.  *See id.* at 165a-74a.  In November 2018, the Borough cited Owner for failing to plow and salt the roadways within the Mall complex.  *Id.* at 176a-77a.

In February 2019, the Borough discovered the pipes for the sprinkler system in the main Mall area had frozen and burst because of a lack of heat in the Mall. R.R. at 178a.  After Owner failed to fix the pipes, the Borough notified Owner it was closing the Mall because without heat or a functional fire suppression system, the Mall was "unoccupiable and unsafe."  *Id.* at 179a.  The Borough then posted the Mall with placards indicating it was "unsafe and uninhabitable," and "occupancy [wa]s prohibited."  *Id.* at 180a.

The Mall remained closed and posted, and the Borough sent Owner a letter titled "Notice of Violation – Dangerous Structure/Hazardous Condition" on April 13, 2023.  R.R. at 257a.  This letter informed Owner the Borough received complaints that the Mall was a dangerous structure or hazardous condition, the Borough had verified those complaints, and Owner was required to "file an application for demolition permit for said structure within 5 (five) days of receipt of this notice."  *Id.*  The letter also informed Owner if it failed to apply for a demolition permit, the Borough would issue a citation which could result in fines.  *Id.*

2

On May 12, 2023, the Borough issued Owner a Notice of Condemnation (Notice). R.R. at 4a-5a. In the Notice, the Borough alleged

> the building is in a rundown, irreparable condition, is structurally unsound; health and safety hazards exist owing to debris and litter. Portions of the building are in a state of collapse, and a fire hazard is present. The building is alleged to be in violation of Borough health, safety and building codes.

*Id.* at 4a. The Notice informed Owner that Council would conduct a hearing on June 14, 2023, to determine if the Mall was a hazard and a public nuisance. *Id.* The Notice also informed Owner the Mall may be razed if Council determined it was "a health hazard, a nuisance, or a dangerous condition." *Id.* at 5a. Finally, the Notice informed Owner of its need to defend against the Borough's allegations. *Id.* In addition to the Notice, the building was posted on May 12, 2023 with a Notice of Condemnation, which also included the date, time, and location of Council's hearing. *Id.* at 185a-87a.

On June 1, 2023, Owner's counsel responded to the Borough by letter, indicating Owner received the Notice and "specifically denies the Borough's contentions that the [Mall] is in a rundown, irreparable condition, is structurally unsound, that health and safety hazards exist, and that portions of the [Mall] are in a state of collapse." R.R. at 263a. Owner further stated it would "be attending the June 14th proceedings to defend against these allegations." *Id.*

At Council's hearing, numerous witnesses testified on behalf of the Borough. Owner does not challenge Council's summarization of the Borough's evidence, which we briefly outline here. First, the Borough's Community Director and Chief Building Officer (Director), who oversees the Borough's Code Enforcement Department, testified regarding the Mall's history of violations. R.R. at 266a.

3

Director also presented photographs, which showed severe deterioration, and explained Owner had not made any efforts to rehabilitate the Mall. *Id.* Council explained Director's

> [p]hotographs depict extensive and severe vandalization inside the Mall, water penetration throughout the Mall including through the roof, . . . the growth of black mold on the walls and floors[,] and direct openings in the roof. . . . Every glass window inside the Mall is broken. The elevator has been vandalized and the elevator pit is open and accessible which includes an 8[-]foot drop. Photographs depict fire damage that occurred in the Mall, hanging drywall and areas of collapse.

*Id.* at 266a-67a. Director explained people continue to break into the Mall and post videos about it online, and that the Mall is "a nuisance and a substantial strain on the Borough, both with regard to the use of manpower and the safety of first responders each time they are called to the Mall." *Id.* He recommended the Mall be demolished for the health, safety, and welfare of the Borough's residents. *Id.* at 267a.

The Fire Chief for Skyview Volunteer Fire Company (Fire Chief), who is also a code enforcement officer and building inspector for the Borough, testified that the fire department responded to the Mall 18 times since 2018. R.R. at 267a. On April 11, 2023, there was a structural fire in the Mall which involved all three floors. *Id.* Over 100 firefighters were brought in to fight the fire, and at one point the firefighters were evacuated because of significant cracks in the roof. *Id.* Fire Chief expressed "extreme concerns about his firefighters entering the Mall due to significant black mold, standing water, falling walls, falling ceilings, broken glass, and severe hazards that exist inside the Mall." *Id.* Fire Chief recounted firefighters recently responded to the Mall for a juvenile trespasser who had fallen through the roof and suffered serious injuries. *Id.* Fire Chief testified the Mall is a significant fire hazard, and recommended it be razed. *Id.*

The Chief Deputy of the Allegheny County Fire Marshall's Office also testified about similar conditions inside the Mall and opined it "is absolutely in an unsafe condition and constitutes a continuing fire hazard." R.R. at 268a. He also "confirmed that the building is not secure and there are definitely areas of ingress and egress that people can use to enter the structure." *Id.*

The Borough's Chief of Police (Police Chief) testified that since the Mall was closed in 2019, his department responded to 177 calls for trespassing, vandalism, and destruction at the Mall. R.R. at 268a-69a. Police Chief described the same hazardous conditions inside the Mall as Director and Fire Chief described. *Id.* at 269a. Police Chief further explained, because of the dangerous conditions, he will not allow his police officers to enter the Mall without protective gear unless there is a life-or-death situation. *Id.* Police Chief testified the Mall is an attractive nuisance, a health and safety hazard, and that there was no way to completely prevent trespassers from entering the Mall. *Id.* Police Chief has personally been inside the Mall on numerous occasions since 2019 and has seen no efforts to clean, repair, or remediate the hazardous conditions inside the Mall. *Id.*

Gregory Wagner (Wagner), a structural engineer, also testified on behalf of the Borough. Wagner inspected the Mall on June 6, 2023. R.R. at 270a. Wagner opined the Mall is a nuisance and a health and safety hazard. *Id.* He found evidence of structural deficiencies and structural unsoundness in the Mall, particularly in the area of the most recent fire, which was in danger of imminent collapse. *Id.* He recommended the Mall be condemned and demolished "[d]ue to the imminent threat of collapse of multiple areas of the Mall and knowing that trespassers are entering in addition to first responders to respond to the incidents." *Id.*

Owner presented the testimony of Michael Wuerthele (Wuerthele), a structural engineer, who testified he believed the level of damage to the Mall could be remediated. *See* R.R. at 270a-71a. Wuerthele, however, admitted he did not dispute the Borough's witnesses' descriptions of the conditions inside the Mall or that hazards and dangers exist in the Mall. *Id.* at 271a. Wuerthele also admitted he could not fully assess the Mall's structural integrity because many of the structural components were concealed. *Id.* Wuerthele did not dispute Wagner's testimony that portions of the Mall are susceptible to failure. *Id.*

Owner's Chief Operating Officer (Owner's Agent) testified Owner recently employed more overnight security guards. R.R. at 271a. Owner's Agent admitted Owner made no efforts to clean or remediate the Mall since it was posted and closed in 2019. *Id.* at 272a. Instead, Owner's only efforts were an attempt to secure the exterior of the Mall to prevent vandalism. *Id.* Owner's Agent did not dispute the Borough's witnesses' description of the condition of the Mall. *Id.* In addition, Owner's Agent admitted that when he or any members of his maintenance crew enter the Mall, they wear hazmat suits. *Id.* Owner's Agent explained Owner was attempting to sell the Mall and had no intentions of tearing it down. *Id.* Nevertheless, he admitted vandals have "destroyed," "completely damaged," and "ruined" the Mall, and Owner has not done anything to remedy the conditions inside the Mall. *See id*. at 107a, 272a.

On July 18, 2023, Council issued a written adjudication, recounting the background and testimony outlined above. *See* R.R. at 264a-74a. Ultimately, Council found the Mall "is structurally unsound and is not feasible to [be] rehabilitate[d] . . . [, and] the only practical way to abate the nuisance is to raze the structure." *Id.* at 273a. Council also concluded the "evidence presented

6

overwhelmingly proves that the structure is an extreme danger to public safety and [Owner] has made no efforts whatsoever to remedy the continuing danger." *Id.* Accordingly, Council declared the Mall to be a public nuisance and ordered the nuisance be abated by razing the Mall. *Id.*

Owner appealed Council's decision to Common Pleas, arguing the Borough failed to provide Owner with proper notice of its Code violations or the evidence against Owner before the condemnation hearing. *See* Common Pleas' Op., 6/10/24, at 2. Owner also alleged Council's factual findings were not supported by substantial evidence because Council ignored the testimony of its structural engineer, Wuerthele. *Id.* Common Pleas rejected these arguments and affirmed Council's Adjudication. *Id.* at 3-5. Owner timely appealed Common Pleas' decision to this Court.

## II. Issues

Owner presents two issues for our review. Owner's first issue is whether Council[1] committed an error of law in failing to determine the Borough violated Owner's due process rights by not providing Owner with adequate notice before the condemnation hearing. Owner's second issue is whether substantial evidence supports Council's finding that the Mall was structurally unsound and not feasible to rehabilitate.

## III. Analysis

When a court of common pleas does not take additional evidence in a local agency appeal, we review the local agency's adjudication to determine whether the local agency violated the parties' constitutional rights or rules of agency practice and

---

[1] Owner framed its issues as whether Common Pleas committed various errors. As we explain below, however, we review Council's decision, not Common Pleas' decision. Thus, we have reframed Owner's issues to comport with our standard of review.

procedure, whether the local agency committed an error of law, or whether substantial evidence supports the local agency's findings of fact. *Havelka v. Ret. Bd. of Allegheny Cnty.*, 229 A.3d 391, 394 n.4 (Pa. Cmwlth. 2020). To determine whether a local agency committed an error of law, "our standard of review is *de novo* and our scope of review is plenary." *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 186 A.3d 375, 385 (Pa. 2018). "In other words, we do not defer to the [local agency's] conclusions of law, and we reassess the record with a fresh pair of eyes." *Allegheny Cnty. Dep't of Health v. Wilkerson*, 329 A.3d 111, 117 (Pa. Cmwlth. 2024).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639-40 (Pa. 1983). In conducting a substantial evidence analysis, we consider whether evidence supports the factfinder's factual findings, but "not whether there is evidence in the record which supports a factual finding contrary to that made by the [factfinder]." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

## A. Due Process

"[T]he right to due process is as equally applicable to administrative agencies as it is to judicial proceedings." *Higgins v. Pub. Sch. Employees' Ret. Sys.*, 736 A.2d 745, 753 (Pa. Cmwlth. 1999). "[T]he essential elements of due process are notice and opportunity to be heard . . . before a tribunal having jurisdiction over the matter." *Smires v. O'Shell*, 126 A.3d 383, 391 (Pa. Cmwlth. 2015) (quoting *Dep't of Transp., Bureau of Driver Licensing v. Clayton*, 684 A.2d 1060, 1064 (Pa. 1996)).

In support of its assertion the Borough failed to provide it with due process, Owner first argues the Borough's Notice of the condemnation hearing "failed to cite

any particulars regarding the . . . [Mall] nor cite any Borough ordinances specifically regarding the condemnation." Owner's Br. at 9, 10-11. Owner, however, responded to the Notice by letter, expressing it would attend Council's hearing and be prepared to defend against the Borough's allegations that "the [Mall] is in a rundown, irreparable condition, is structurally unsound, that health and safety hazards exist, and that portions of the [Mall] are in a state of collapse." *See* R.R. at 263a. Owner's letter demonstrates the Borough's Notice sufficiently informed Owner of the Borough's allegations. In addition, Owner disregarded the Borough's demands for Owner to remediate Code violations at the Mall for nearly five years, thereby permitting the Mall to further deteriorate. *See Murray v. City of Wilkes-Barre*, 394 A.2d 1055, 1057 (trial court properly rejected claim of insufficient notice where property owner "allowed [the defective] conditions to exist and indeed worsen over a ten[-]year period in effective disregard of official demands for their correction"). As a result, Owner's first argument fails.

Owner next argues the Borough violated its right to due process by not providing Owner with the Borough's evidence in advance of the condemnation hearing. Owner's Br. at 9. Specifically, Owner argues the Borough presented an expert report, which Owner was not aware of in advance of Council's hearing, and Owner was unable to review and prepare a defense to the report. *Id.* at 10, 12.

This argument fails because "[h]earings before local agencies are governed by the Local Agency Law,[2] which does not provide for discovery or application of the Rules of Civil Procedure." *Ret. Bd. of Allegheny Cnty. v. Colville*, 852 A.2d 445, 450 n.10 (Pa. Cmwlth. 2004) (citation omitted). In addition, although Owner objected to its perceived lack of notice of the Borough's expert report, Owner did

---

[2] 2 Pa.C.S. §§ 551-555, 751-754.

not make a request to be provided with additional time or an additional opportunity to respond. Instead, Owner presented the testimony of its own structural engineer, which Owner was already prepared to do, to contradict the Borough's structural engineer's report.

## B. Substantial Evidence

Owner's final issue for this Court's review is whether Council's findings of fact are supported by substantial evidence. Owner's first argument is that the Borough did not present any evidence the Mall was not able to be rehabilitated. *See* Owner's Br. at 12-13. As fully outlined above, the Borough's witnesses explained the health and safety issues presented by the Mall's deteriorating conditions. The Borough's witnesses also recommended the building be condemned and razed due to the hazardous conditions, fire risks, structural damage, potential for collapse, ongoing and unpreventable presence of trespassers, and danger to first responders. The Borough presented evidence a reasonable mind could accept as adequate to support the conclusion that the Mall was a nuisance that could not be rehabilitated and needed to be razed. As a result, Owner's first argument fails. *See Valley View Civic Ass'n*, 462 A.2d at 639-40.

Owner's second argument that Council's findings of fact are not supported by substantial evidence is that Council ignored Wuerthele's testimony. *See* Owner's Br. at 12-13. Council, however, summarized Wuerthele's testimony at length in its written decision, including his opinion the damage to the Mall could be remediated. *See* R.R. at 271a. Ultimately, Council credited the testimony of the Borough's structural engineer, and Council did not credit Wuerthele's testimony. This was within Council's purview as factfinder, and we will not substitute our judgment for that of Council. *In re Nevling*, 907 A.2d 672, 674 (Pa. Cmwlth. 2006) (explaining

10

that we "must accept the credibility determinations made by the local agency which hears the testimony, evaluates the credibility of the witnesses and serves as fact-finder," and we may not "substitute [our] judgment for that of the local agency" unless substantial evidence does not support the local agency's findings). Accordingly, Owner's second argument that substantial evidence does not support Council's findings of fact also fails.

## IV. Conclusion

For the reasons set forth above, we affirm Common Pleas' order.

_____
STACY WALLACE, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Century III Mall PA., LLC,         :
                         Appellant  :
                                        :
            v.                    : No. 911 C.D. 2024
                                        :
West Mifflin Borough and        :
West Mifflin Borough Council     :

# **O R D E R**

**AND NOW**, this 11th day of June 2025, the June 10, 2024 order of Court of Common Pleas of Allegheny County is hereby **AFFIRMED**.

 

_____
STACY WALLACE, Judge